## In re WILLIAMS.
## In re SASSEEN.

No. 25717.    Oct. 29, 1935.

Frank G. Anderson and John H. Halley, for the State Bar.

Sam Massingale and Clayton Carder, for respondents.

BAYLESS, J.    This is a proceeding to review the recommendation of the Board of Governors of the State Bar of Oklahoma in a disciplinary matter involving W. M. Williams and J. E. Sasseen, attorneys at law. The recommendation of the board was that said attorneys be reprimanded, the separate reprimands being included in the recommendation.

The following facts may be deduced from the record: W. J. Radney, a citizen of Greer County, Okla., was convicted of a

crime and sentenced to serve a term of imprisonment in the state penitentiary. Williams was his attorney in defending against the crime. Thereafter Williams was elected county attorney of Greer county for a term ending in the year 1928, and in 1928 was re-elected for another two-year term, but resigned early in January, 1929, and was elected to the State Senate of Oklahoma. Williams appointed Sasseen his assistant early in 1928, and Sasseen he'd this position under Williams and under his successor until sometime in November, 1929. After Radney had been convicted and while his appeal was pending in the Criminal Court of Appeals of Oklahoma, and on April 21, 1927, Radney executed a promissory note to M. H. Campbell (the wife of J. F. Campbell, the complainant against these attorneys), and also a real estate mortgage to secure this note. The note was due in one year from date. The note and mortgage were sold to one Speed, who notified Radney sometime in the month of April, 1928, that he was the holder of said note and mortgage and demanded payment thereof. During this time Radney had been going to the office of Williams, as county attorney, and consulting with him. When Radney received the letter from Speed regarding the note and mortgage he went to Williams' office, and, according to Sasseen, consulted with Sasseen about the matter. Apparently Sasseen had not lived in Greer county long, and had never represented Radney, and in one place in the testimony says that he did not know Radney at that time. However, in another place he says that he had met Radney theretofore. He prepared a letter for Radney to write to Speed setting forth Radney's claim that the note and mortgage were invalid. Speed thereupon brought suit on the note and mortgage on August 16, 1928. Sasseen, together with other attorneys, filed an answer and cross-petition in the action on behalf of Radney on the 17th day of September, 1928, and on the same day filed a motion on behalf of Radney to join Dr. J. F. Campbell (the complainant) and his wife, M. H. Campbell, the payee of said note, as parties to the action, and this motion was granted. Radney thereafter filed an amended answer and cross-petition. Radney's defense to the note was as follows: That Dr. J. F. Campbell was his family physician in whom Radney placed implicit confidence; that Dr. Campbell suggested to Radney that for $10,000 he could procure an unconditional pardon from the Governor of the State of Oklahoma; that

Radney's wife was then ill with what proved to be a fatal illness, and under the strain of circumstances and the urging of Dr. Campbell he executed the note and mortgage to Dr. Campbell's wife as a consideration for procuring a pardon, with the distinct understanding and agreement that they were to hold said note and mortgage until the pardon was procured, whereupon the note and mortgage would become valid, but in the event the pardon was not procured the note and mortgage would be returned to Radney; that no pardon was procured; and that, in violation of his understanding and agreement, the note and mortgage were not returned to Radney, but were ostensibly sold to Speed. On the 25th day of September, 1928, after Sasseen had filed the answer and cross-petition for Radney, Williams, as county attorney, filed a criminal complaint before a justice of the peace in said county, charging the Campbells with grand larceny and embezzlement growing out of the same facts and circumstances that Radney pleaded as a defense to the note and mortgage. The Campbells were bound over to the district court, where the charges against Mrs. Campbell were dismissed by the county attorney, although Dr. Campbell was twice tried thereon, each trial resulting in a hung jury. The information filed in the district court was indorsed as follows:

"W. M. Williams, county attorney, by J. E. Sasseen, assistant. I have examined the facts in this case, and recommend that a warrant do issue. W. M. Williams, County Attorney by J. E. Sasseen, Assistant."

Sasseen testified at the hearing of this matter that he made no investigation of the facts out of which the criminal prosecution arose, despite the fact that he indorsed the information as above stated. Sasseen further testified that when the first trial of the criminal case came on he took very little part in it and made it his business to appear somewhere else during the remainder of the trial. Williams, who had resigned as county attorney early in 1929, accepted employment from Radney in the civil matter in the spring of 1929.

The charge against Williams is that he violated rule No. 38 of the ethics of the profession as laid down by the Bar Association of the State of Oklahoma (this rule being identical with rule 38 of the Canons of Legal Ethics promulgated by the American Bar Association), by accepting employment after leaving public office in a matter

which he had investigated while holding public office.

The charge against Sasseen is that after accepting employment in a civil matter while serving as county attorney he furthered the defense of that action by prosecuting parties to the civil action in a criminal proceeding based upon the same facts and circumstances, and that after leaving said office he accepted employment in said matter which he had investigated while in said office.

The cases were tried together, and apparently were treated as though the charges were the same, and as though the sole charge against each of the said attorneys was the violation of said rule 38, which reads as follows:

"A lawyer having once held public office or having been in the public employ should not after his retirement accept employment in connection with any matter that he had investigated or passed upon in said office or employ."

The defense and principal argument of Williams and Sasseen is that said canon was not adopted by the American Bar Association until sometime in the year of 1928, probably after the matters above set forth were transpiring, and that said rule was not adopted or promulgated in Oklahoma by the State Bar until in October, 1929, after all of these things had transpired; and consequently they could not be charged and convicted under an ex post facto rule. Both men also urge that they had not been guilty of conduct meriting any punishment whatsoever.

It has been said (Hunter v. Troup, 315 Ill. 293, 146 N. E. 321) that the American Bar Association is not a legislative tribunal, and that the Canons of Legal Ethics adopted by them are not binding and are not enforced by the courts as such, although they constitute a safe guide for the members of the profession, and the courts may discipline a member of the bar for conduct which amounts to a violation or disregard of such rules.

It has been said also (In re Winne, 208 Cal. 35, 280 P. 113) that an investigation and proceeding to discipline a member of the bar is not criminal in its nature, and that such proceedings instituted under an authority created after the happening, and a charge under a specified rule announced after the happening, are not ex post facto where other authority for the investigation and punishment for such conduct existed prior to the happening.

In Oklahoma, even though the State Bar has been set up by an act of the Legislature, the matter of disciplining the members of the bar of Oklahoma remains, in the final analysis, in the Supreme Court of the state, and the investigations and proceedings of the Board of Governors and the inferior agencies of the State Bar are always under the control and supervision of the Supreme Court.

If an investigation of the conduct of a member of the bar of Oklahoma develops, upon undisputed and uncontradicted evidence, the existence of a state of facts which would merit this court taking steps to discipline such member of the bar, this court will proceed so to do, regardless of the particular rule or canon specified in the formal charge.

Prior to the adoption of chapter 264, S. L. 1929, generally referred to as the State Bar Act, there was in effect in Oklahoma section 4106, C. O. S. 1921, specifying causes for the suspension or revocation of the license to practice law, and the third cause was "for willful violation of any of the duties of any attorney or counselor." This would seem to be a very board and general statement of a cause, but as was said by Mr. Costigan in his work, Cases on the Legal Profession and Ethics (quoting from Williams on Legal Ethics), page 295:

"Professional ethics is not a distinct system of morality, but it is the application of the accepted standards of right and wrong to the conduct of professional men in the business relations peculiar to their professional employment. It is not important what the profession may be or the nature of the relations resulting from it, for under all circumstances the first duty of every business man is to conduct his business with integrity. In the general treatment of this subject it has sometimes happened that too much stress has been put on the adjective 'professional,' so that the substantive 'ethics' has been lost sight of. * * * There is no difference between personal and professional ethics."

We are not, therefore, inclined to discuss at length and pass upon the question of whether Williams and Sasseen violated rule 38 or not. It is admitted that while Williams was serving as county attorney, Sasseen, his assistant, undertook to represent a former client of Williams in a civil action, and that after said defense had been begun Williams and Sasseen, under the

cloak of their official position, began to prosecute criminally persons whom Sasseen had asked the court to make parties defendant to the civil action, where the facts upon which the defense to the civil action was based and the facts upon which the criminal prosecution was based were the same, and necessarily knowledge of such facts in an official capacity was derived in a more or less nonofficial capacity. Williams says he knew nothing of the facts upon which the civil defense was based, that is, by personal investigation. Sasseen says he made no investigation of the facts upon which the criminal prosecution was based, although, as heretofore shown, he indorsed his approval of the complaint. The impression that the powers of the office of county attorney were thrown into the scale of a civil lawsuit in favor of the defense when the county attorney's office by law and by all ethics was required to be and remain neutral is inescapable.

This court is of the opinion that when the county attorney decided to institute criminal prosecution against the Campbells he should have required his assistant to sever his connection with either the office of county attorney or the civil lawsuit. His connection with both was inconsistent and highly improper. When Sasseen became aware that the county attorney intended to prosecute criminally the Campbells, he should have severed his connection either with the office or with the civil lawsuit. Sasseen does not help himself or Williams when he attempts by his testimony to show that he took as little part as possible in the prosecution of the case criminally, for in so doing he demonstrates that he deprived his employer, Greer county, of services to which it was entitled, and further demonstrates that he understood and knew that his positions were inconsistent and improper.

It is the judgment of the court that the recommendation of the Board of Governors as to Sasseen stand: and that the said Williams be reprimanded in keeping with the reprimand given Sasseen instead of the reprimand which is recommended.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, PHELPS, CORN. and GIBSON. JJ., concur. BUSBY and WELCH, JJ., absent.