[No. 27300.   Department Two.   August 18, 1939.]

WILLIAM CALLAHAN, *Respondent and Cross-appellant,*
v. DeWITT JONES *et al., Appellants.*[1]

[1]Reported in 93 P. (2d) 326.

*D. Elwood Caples,* for appellants.

*Wilkinson & Langsdorf,* for respondent and cross-appellant.

BEALS, J.—The defendants in this action, DeWitt Jones and Eugene G. Cushing, at all times herein mentioned were attorneys at law and copartners, engaged in the general practice under the firm name of Cushing & Jones, in the city of Vancouver, Washington. Since January 1, 1935, Mr. Cushing has been the regularly elected, qualified, and acting prosecuting attorney for Clark county, and Mr. Jones has been his regularly appointed deputy.

The plaintiff herein, William Callahan, for some time prior to May 1936, lived in a trailer, which was standing on property owned by a railroad company, in the city of Vancouver. In the late spring of 1936, he went to eastern Washington on a visit, returning to Vancouver early in the following September. On his return, Mr. Callahan discovered that one George O. Baird had moved the trailer to another location in the city of Vancouver, whereupon Messrs. Callahan and Baird called at the office of defendants, where they discussed with Mr. Jones the matter of the removal of the trailer and the personal property therein located, some of which was missing. A few days later, Mr. Callahan again called at defendants' office, stating to Mr. Jones that he had left in the trailer, secreted under a mattress, stock certificates which he owned, representing one hundred forty-seven shares of the capital stock of Stone & Webster, Inc., of New York City, and that he had discovered that the stock certificates had been stolen. The defendants then made an investigation of

the matter, with the result that George O. Baird was apprehended in the city of San Francisco and returned in custody to Clark county, where he was charged with the crime of grand larceny, based upon the theft of Mr. Callahan's stock. Baird pleaded guilty, and December 15, 1936, was sentenced to the penitentiary.

At the time Mr. Callahan called defendants' attention to the theft of his stock, some conversation was had relative to the recovery thereof, Mr. Callahan requesting defendants to notify Stone & Webster, Inc., of the fact that the stock had been lost or stolen, for the purpose of preventing transfer of ownership on the corporate records. Mr. Callahan then paid defendants five dollars as a retainer for legal services to be rendered, and the corporation was advised, by letter dated September 12, 1936, written by Mr. Jones, and signed by him as "Deputy Prosecuting Attorney, Clark County, Washington," of the fact that the stock was missing.

Defendants, in the course of their investigation, discovered that Baird had forged Callahan's signature to a purported assignment on the stolen certificates and disposed of them through a Vancouver bank. After the termination of Baird's prosecution, and as the result of negotiations between defendants and the bank, defendants, acting on behalf of Callahan, persuaded the bank which had received the certificates from Baird to make good Callahan's loss by turning over to defendants an equal number of shares of Stone & Webster stock, which the bank had purchased November 24th, and which was then of the market value of $4,850. A controversy then arose between Callahan and defendants, the latter claiming the right to charge Callahan a fee in a sum equaling twenty-five per cent of the value of the property recovered for Callahan. Defendants made this claim under an oral contract with

Callahan, which contract the trial court found defendants made with Callahan at the time they were retained by Callahan to recover the shares of stock. Callahan refused to pay defendants any fee whatsoever, denying the existence of any contract and contending that, under Laws of 1887-8, chapter 103, p. 189, § 1 (Rem. Rev. Stat., § 4138) [P. C. § 1792], *infra,* defendants were by law prohibited from making any charge against plaintiff.

Defendants held the stock certificates under a claim of attorney's lien, and during the month of April, 1937, plaintiff instituted this action in replevin, seeking to obtain possession of the stock and damages for its detention. Defendants answered the complaint and cross-complained, claiming their attorney's lien, and asking to have the same reduced to judgment.

The action came on regularly for trial before the court, sitting without a jury, with the result that the court found that an oral contract had been made between plaintiff and defendants to the effect that defendants should represent plaintiff as his attorneys in an attempt to recover the stolen stock certificates, or their value, and that defendants should receive for their services an amount equal to twenty-five per cent of the value of any recovery which they might make. The court further found that defendants had rendered services to plaintiff, as claimed by defendants, but concluded that, under the statute above referred to, and as a matter of public policy, defendants were not entitled to recover on their contract, and that plaintiff was entitled to recover possession of his stock, free and clear from any claim on the part of defendants. From a judgment entered in accordance with the findings of fact and conclusions of law, defendants have appealed. Plaintiff has cross-appealed from the judgment because of the refusal of the trial court to award him damages

on account of the decrease in value of the stock while in defendants' possession.

Error is assigned upon the entry of the judgment in respondent's favor, appellants contending that the judgment does not conform with the evidence and the facts found, and is contrary to law. Cross-appellant contends that the trial court erred in not allowing him damages, as above stated.

Laws of 1887-8, chapter 103, p. 189, § 1 (Rem. Rev. Stat., § 4138), above referred to, reads as follows:

"No prosecuting attorney shall receive any fee or reward from any person on behalf of any prosecution for any of his official services, except as provided in this act, nor shall he be engaged as attorney or counsel for a party in any civil action, [or for] a party to any criminal proceedings depending upon the same facts as such criminal proceedings."

The word "act" in the third line of the section should undoubtedly read *chapter,* as printed in Rem. Rev. Stat., § 4138.

The same statute appears in Rem. & Bal. Ann. Codes & Statutes of Washington as § 3969, accompanied by the following note: "The word 'criminal' in the last line should read 'civil'," and the word *civil* is included in brackets following the word *criminal.* This reading of the section has been continued in subsequent codes. Whether the notation last referred to is correct, is unimportant, in so far as this action is concerned.

Findings Nos. 7 and 8 made by the trial court read as follows:

"VII. That plaintiff, at the time of retaining defendants' services, agreed to pay and defendants agreed to accept for services to be performed by them, a sum equivalent to 25% of the amount, if any, recovered for plaintiff, and that such sum based on the value of the stock recovered for plaintiff at the time of such recovery was and is the sum of $1212.75, and that neither

said amount, or any portion thereof, has been paid to defendants, and that defendants claim an attorneys' lien upon said stock certificates for the payment thereof.

"VIII. That the contract of employment entered into between plaintiff and defendants, as recited in the preceding paragraph, was and is in contravention of public policy and in violation of the provisions of § 4138 of Remington's Revised Statutes of the State of Washington, and, therefore, void and of no force and effect."

It appears that, December 4, 1936, respondent executed a power of attorney to appellants, authorizing them to represent him in all legal proceedings incidental to the recovery of respondent's stock. The power of attorney was signed several days before the criminal prosecution, which appellant Cushing had instituted by information against Baird, was terminated by the latter's plea of guilty and the imposition of sentence. It clearly appears from the testimony of appellant Jones that the contract which appellants entered into with respondent was made prior to the institution of the criminal proceeding against Baird.

Article 11, § 5, of the constitution of this state, reads as follows:

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township, or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population. And it shall provide for the strict accountability of such officers for all fees which may be collected by them, and for all public moneys which may be paid to them, or officially come into their possession."

The legislature has prescribed the duties of prosecuting attorneys (Rem. Rev. Stat., §§ 4130, 4131, 4132, 4133, 4136, 4137 and 4138 [P. C. §§ 1788, 1789, 1790, 1791, 1795, 2155, 1792]), and by Rem. Rev. Stat. (Sup.), § 4200-5a, Rem. Rev. Stat., §§ 4201 and 4203, it has fixed their compensation. By § 4138, *supra*, the legislature has limited the activities of prosecuting attorneys in connection with the general practice of law. This provision of the statute was first enacted in 1858, p. 13, § 8, of the laws of that year reading as follows:

"The prosecuting attorney shall receive no fee or reward from or on behalf of any prosecution for any of his official services, nor shall he be engaged as counsel for either party in any civil action depending upon the same facts as a criminal prosecution."

The statute was reenacted by Laws of 1877, p. 248, § 13; Code of 1881, § 2164; Laws of 1883, p. 74, § 17; Laws of 1886, p. 62, § 12; and in its present form, Laws of 1887-8, p. 189, § 1.

The right of the legislature to regulate the activities of a public officer outside of his official duties was upheld by the supreme court of Pennsylvania, *In re Shelley*, 332 Penn. 358, 2 Atl. (2d) 809, and we find no reason for questioning the validity of § 4138, *supra*.

The legislature has chosen to restrict the field of activities of lawyers who accept office as prosecuting attorneys. Whether or not practice by prosecuting attorneys has been unduly restricted, is a legislative, not a judicial, question. In the case at bar, appellants were diligent and conscientious in all that they did, both in prosecuting Baird and in recovering for respondent his property. It does not appear that they violated any principle of ethics, but the trial court held that a declared legislative public policy, as embodied in the statute above referred to, prohibited appellants from representing respondent as his attor-

neys in the particular matter which is the subject of this action. We are convinced, as was the trial court, that appellants at all times acted in entire good faith, and that no prejudice to anyone resulted from what they did. The trial court, at the close of the case, orally announced that he ruled in favor of appellants, but later, on reconsideration and after reargument, decided in favor of respondent.

The general rule in regard to the participation by a prosecuting attorney in civil practice has been well stated as follows:

"He [the prosecuting attorney] is not prohibited, in the absence of statute, from representing private litigants where he owes no duty to the state." 18 C. J. 1308, § 32.

"A contract made by a public officer is against public policy and void, if it interferes with the unbiased discharge of his duty to the public in the exercise of his office, or if it places him in a position inconsistent with his duty to the public, or even if it has a tendency to induce him to violate such duty and the question of the validity of such a contract does not depend on the circumstances whether it can be shown that the public has actually suffered any detriment or loss." 22 R. C. L. 460, § 121.

In 2 Thornton, Attorneys at Law, 1113-4, § 705, we find the following:

"The duties of a prosecuting attorney are usually prescribed by statute, and may be increased or diminished as the legislature may see fit, and in some instances certain duties are imposed by the constitution; but the prosecutor cannot be compelled to perform acts other than those so provided for. The prosecutor represents the people, and his right to do so, as expressed in the constitution or statute, cannot be restricted or superseded excepting in the manner provided for by law. He is vested with a personal discretion as a minister of justice, and it is his duty to act impartially. He must guard the interests of public

justice in behalf of all concerned, and he must not become entangled with private grievances which will prevent him from properly performing his official duties. A prosecuting officer is invested with a broad discretion, subject to a certain judicial control, and he will not be excused for the nonperformance of his official duties because of local sentiment or popular clamor."

A legal officer of the state, representing the state or a county, is a law enforcing officer, interested only in seeing that justice is done, the laws enforced, and persons guilty of violation of law punished. The principle embodied in Rem. Rev. Stat., § 4138, has received the particular attention of different legislatures of the territory and state of Washington, and is an important portion of our law governing public officers.

It is easy to understand the evils guarded against by this statute. While, in the case at bar, it clearly appears that appellants discharged their official duties with unbiased minds, it might happen that a holding that the contract here in question is valid and enforcible might at some future time precipitate difficulties and open the door to the evils which the statute was designed to prevent. If prosecuting attorneys may enter into such contracts as this, the intent of the statute that such officers shall receive no fee or reward on behalf of any prosecution can be evaded, the possibilities of such evasions of the statute being obvious.

The legislative intent to entirely separate the official duties of prosecuting attorneys from any private gain clearly appears, and this legislative policy is so clearly in the public interest that the statute should not be restricted by judicial interpretation, but should be so construed as to accomplish to the full its beneficent purpose.

The principle was long ago laid down that no man can serve two masters. It is not consistent with the

public interest that a prosecuting officer may receive personal gain as the result either of the conviction or acquittal of one charged with infraction of the law, or in connection with the filing of any charge. Neither should the power of the state be used to discover facts or evidence which might result in private profit to the official vested by law with authority to use such power. The very appearance of evil in connection with the administration of public office must be avoided.

The following decisions follow the principle here involved: In the case of *Cheney v. Unroe*, 166 Ind. 550, 77 N. E. 1041, 117 Am. St. 391, it appeared that the plaintiff held a temporary appointment as superintendent, to see that certain contractors who were constructing a road faithfully performed their contract. The plaintiff was to receive from the county a dollar and a half a day, and, during the period of his employment, also contracted to work for the contractors at the same wage paid other workmen. The court held that the contract with the contractors was illegal and void, and that, quoting from *Waymire v. Powell*, 105 Ind. 328, 4 N. E. 886,

"It is of no consequence that no injury, or that an actual benefit, has resulted from such employment. The law will not permit public servants to place themselves in a situation where they may be tempted to do wrong, and this it accomplishes by holding all such employment, whether made directly or indirectly, utterly void."

In the case of *People ex rel. Davis v. Thomas*, 33 Barbour 287, the supreme court of New York, holding that the power of appointment vested in three justices could not be by them exercised by the appointment of one of their own number, said:

"These three justices are the depositaries of a public trust, and it is a principle of universal application, as

well as of public decency, that neither of them should be permitted to discharge it for his own benefit or to promote his private interest."

In the case of *Spence v. Harvey*, 22 Cal. 337, 83 Am. Dec. 69, the supreme court of California held that a contract of lease, entered into by the plaintiff in expectation of receiving an appointment as postmaster, was void as against public policy. The plaintiff received the appointment as postmaster, and established the postoffice on the premises which had been leased to him, but thereafter he was evicted, as he contended, by collusion and fraud on the part of his lessors. The court observed that the office of postmaster is a public one, and that in the discharge of his duties, the plaintiff was bound to consider the best interests of the public, and that any contract in connection with his official duties which inured to his private gain interfered with the discharge of his duties as a public officer, and that such contract was void, regardless of whether or not it could be shown that the public suffered any detriment.

In the case of *People ex rel. Hutchison v. Hickman*, 294 Ill. 471, 128 N. E. 484, the supreme court of Illinois, considering a statute of that state very similar to our own, held that the prosecuting attorney was not entitled to receive a fee for services rendered to the widow of a man who had been killed by one Mings, in collecting for the widow damages from Mings. The prosecuting attorney contended that his employment in the civil action commenced after Mings' conviction, but the court held against him upon this point, and concerning his right to accept the employment, said:

"It was evidently the purpose of the legislature in enacting said provision to prevent any influence upon the discharge of the duties of the State's attorney by reason of personal interest on his part, through employment of individuals interested in the prosecution

of a criminal charge, to prosecute a civil action depending on the same facts upon which such prosecution may rest. . . .

"A State's attorney who has been given to understand that he will be employed to prosecute a civil case after the conclusion of the criminal case may be influenced by improper motives of self-interest to secure a conviction of a citizen charged with crime or to prevent such conviction. Such a holding would likewise open the door for criminal prosecutions in aid of civil actions. We are of the opinion that it was the purpose and intent of the legislature that a State's attorney should not at any time be interested or employed in a civil case which it might reasonably be presumed would grow out of and depend upon the facts upon which the criminal prosecution depends."

Appellants rely upon two Iowa cases, the first, *Bellison v. Apland & Co.*, 115 Iowa 599, 89 N. W. 22. In that case, the court construed an Iowa statute forbidding county attorneys to accept employment

" '. . . in any action or proceeding pending or arising in his county, based upon substantially the same facts upon which a prosecution or proceeding has been commenced or prosecuted by him in the name of the county or state.' "

The Iowa statute is even broader than that in force in this state, as private practice is forbidden in connection with facts even substantially the same as those involved in a criminal proceeding. The prosecuting attorney represented the plaintiff in an action for damages alleged to have been occasioned by reason of the failure of the plaintiff's husband to provide for her, it being alleged that this failure resulted from the sales of liquor by the defendant to the plaintiff's husband. A judgment in favor of the plaintiff was reversed on appeal, because of erroneous instructions given by the trial court, but the court also considered the question of whether or not the county attorney,

under the Iowa statute, was entitled to represent the plaintiff. The court held that, under the evidence, it appeared that the suit was not based upon even substantially the same facts upon which an indictment had been returned by a grand jury. If the civil action was not based upon even substantially the same facts as the criminal prosecution, the law officer of the state was certainly not prohibited by the statute from representing a party to the litigation.

The second Iowa case cited by appellant is that of *Snyder v. Tribune Co.*, 161 Iowa 671, 143 N. W. 519, an action against a newspaper for libel, instituted by a resident of another county. The county attorney of the county of the plaintiff's residence appeared as counsel for the defendant. The court held that the statute of Iowa above referred to did not apply, as it forbade the participation of county attorneys in private litigation only in the county in which he had been elected to serve as county attorney.

The statute of this state above referred to is couched in general terms, and embodies a sound principle of law. The operation of the statute should not be limited by judicial construction. The law embodies an important principle of public policy, and should be construed so as to accomplish its purpose.

This court has held, in *Delbridge v. Beach*, 66 Wash. 416, 119 Pac. 856, that a contract for legal services, which is against public policy, is void and unenforcible. The case cited is nowise in point here upon the facts, but has some bearing upon the situation presented by the question of public policy.

The case of *Beck v. Boucher*, 114 Wash. 574, 195 Pac. 996, is relied upon by both parties herein. It appeared that an attorney solicited employment and procured an agreement for contingent compensation for legal services to be rendered. It was held that, while the

original contract was solicited by the attorney, contrary to the code of legal ethics of this state, and contrary to Rem. Rev. Stat., § 2370 [P. C. § 8763], a second contract had been entered into between the parties, under which the litigation had been prosecuted to a successful conclusion. It was held that the attorney was entitled to compensation. In the course of the opinion, it was noted that, while an attorney may be disciplined for soliciting business, the contract which the parties entered into was not against public policy, but entirely consistent therewith. While, in soliciting the employment, the attorney was guilty of wrongful conduct, the client, for a considerable period of time, availed herself of his services and entered into a second contract, by the terms of which the attorney agreed to accept a lesser amount of compensation than that fixed by the first contract. The attorney performed valuable services under this second contract, and this court rightly held that the client was estopped from refusing to pay for valuable services which she had accepted over a long period of time, having full knowledge from all the circumstances.

Appellants contend that, assuming that their contract was void as in violation of Rem. Rev. Stat., § 4138, *supra*, nevertheless the trial court should have allowed them a recovery on the basis of a *quantum meruit* for the value of the professional services which they rendered to respondent. In this connection, appellants cite the opinion of the supreme court of New Mexico, in the case of *Baca v. Padilla*, 26 N. M. 223, 190 Pac. 730, 11 A. L. R. 1188, in which it was held that a contract for legal services entered into between an attorney and a private party, under the terms of which the attorney, for a contingent fee, was to act as private prosecutor in a criminal case, was void as against the policy of the law, the court, however, hold-

ing, in an action by the attorney, that the contract was neither *malum in se* nor *malum prohibitum,* and that a recovery should be allowed on the basis of a *quantum meruit.* It does not appear that any statute similar to § 4138 was in force in New Mexico, and the attorney who was allowed to recover was not holding a state or county office.

In 2 R. C. L. 1046, § 128, is found the following:

"There is an obvious distinction bearing upon the right of an attorney to recover upon a quantum meruit for services rendered pursuant to an illegal contract, between a case where the contract is illegal because the services agreed to be rendered in performance thereof are illegal, and a case where the contract is illegal only because of some improper provision relating to the mode of compensation, or an illegal stipulation against the right of the client to compromise the claim without the consent of the attorney. It is apparent, in the first case, that every objection to permitting a recovery upon an express contract applies with equal force to a recovery upon a quantum meruit. And this is true even when the services are not intrinsically illegal, but are improper and contrary to public policy because of the circumstances under which they are rendered."

In the case of *Carter v. Bradley County Road Imp. Dist.,* 155 Ark. 288, 246 S. W. 9, an action by a state highway engineer, based upon services rendered in connection with a contract for the construction of a public road, the supreme court of Arkansas held there could be no recovery upon a *quantum meruit,* as the contract pursuant to which the services were rendered was prohibited by law.

The supreme court of Georgia, in the case of *Sapp v. Davids,* 176 Ga. 265, 168 S. E. 62, 85 A. L. R. 1361, held that

"An express agreement denounced by law cannot be made legal and binding as an implied contract, by

merely praying for a recovery on quantum meruit of a portion of the amount expressly agreed upon."

In our opinion, these cases lay down the correct rule, and we decline to follow some authorities in which the contrary doctrine was approved.

■ Respondent in the court below sought damages on account of the decrease in value of the stock while the same was held by appellants in their possession. The trial court failed to grant respondent any recovery upon this phase of the case, and respondent cross-appealed from the judgment, in so far as it failed to grant him any relief by way of damages.

Examination of the record convinces us that respondent was entitled to no relief by way of damages, for the reason that appellants urged him to sell the stock, which respondent refused to do, choosing to hold the same, believing that it would increase in value.

We are convinced that the contract relied upon by appellants, and which the trial court correctly found was entered into between the parties, was void as in contravention of § 4138, and as against an eminently sound and repeatedly expressed legislative policy, and that the trial court properly held that the contract could not be made the basis of any recovery on the part of appellants against respondent, either on the contract or by way of *quantum meruit.*

The judgment appealed from is affirmed, both upon appellants' appeal and respondent's cross-appeal. As both parties appealed from the judgment, neither party will recover costs in this court.

BLAKE, C. J., MILLARD, JEFFERS, and GERAGHTY, JJ., concur.