SINCLAIR *v.* STATE OF MARYLAND

[No. 83, September Term, 1975.]

*Decided September 14, 1976.*

244

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ▌O'DONNELL, JJ.

*Paul H. Spiller*, with whom were *Morton Richard Kimmel* and *Kimmel, Spiller & Bradley* and *Fred S. London* on the brief, for appellant.

*Bernard A. Raum, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Clarence W. Sharp, Assistant Attorney General*, on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. SMITH, J., concurs in the result and filed a concurring opinion at page 261 *infra*.

We granted certiorari to consider whether a state's attorney, consistent with this State's public policy and the due process to which an accused in a criminal cause is constitutionally entitled, may initiate or participate in a prosecution when he has a conflicting private interest in a civil matter. Although it is of great importance to the administration of the criminal justice system in this State, this exact question has not been previously addressed by this Court.

The defendant-petitioner, Philippe Andre Sinclair, was convicted by a jury in the Circuit Court for Caroline County (Wise, J.) on five counts of violating the Worthless Check Act, Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 142, and sentenced to serve a substantial term of imprisonment. In this Court, as he did in the Court of Special Appeals, Sinclair contends that the prosecutors who initiated his prosecution and represented the State at his trial had a conflict of interest which mandates reversal of his conviction. We conclude, for reasons which will be set out

presently, that an evidentiary hearing is required in order to resolve the question raised by the petitioner; accordingly, we will remand the case to the trial court for that purpose.

For an understanding of the issue presented in this cause, we must set out in some detail the facts disclosed by the record. Underlying this entire dispute is The Great Oak Lodge, a hotel, restaurant and marina complex located on Fairlee Creek, an arm of the Chesapeake Bay, near Chestertown in Kent County, Maryland. The lodge, during the summer of 1973, was operated by the Sinwellan Corporation, of which Sinclair was the president. The record discloses that this resort, through its executive chef, frequently ordered meat from the Fulton Meat Packing Company, located in Massachusetts, and that pursuant to those orders Fulton shipped meat to the lodge by common carrier on a C.O.D. basis. On five separate occasions between July 13 and August 31, 1973, the lodge accepted meat sent by Fulton and in return presented the carrier with five separate corporate checks, totaling $14,046.88, signed by the petitioner. These checks, in due course, were received by Fulton, but when it attempted to cash them, each was returned by the drawee bank for insufficient funds. Fulton, on several occasions, contacted Sinclair with respect to these checks and was told by him to "Redeposit them . . . they are all right." Upon redeposit, however, the checks bounced again.

Subsequently, on November 9, 1973, the State's Attorney for Kent County, Richard R. Cooper, filed in the circuit court of that county a 20-count criminal information against Sinclair and the Sinwellan Corporation, charging them with false pretenses (Art. 27, § 140) and fraud (Art. 27, § 142) in connection with the five checks given to Fulton. After the defendants pleaded not guilty and elected a jury trial, the case, on January 22, 1974, was removed to the Circuit Court for Caroline County at the request of the state's attorney. Three days later the Deputy State's Attorney for Kent County, Basil Wadkovsky, filed a motion in the Caroline County court requesting a delay in the trial date which

listed, in addition to other reasons, the following as a ground for granting the motion:

"That the Defendant has made certain allegations concerning the State's Attorney which has required the State's Attorney to request the Governor of the State of Maryland to appoint the Attorney General to prosecute these cases. That the Assistant Attorney General who has been tentatively assigned to handle the prosecution for the State is in trial in another county and will not be available to prosecute these cases for at least two (2) months. Attached please find a copy of [the state's attorney's] letter to Governor Mandel." [1]

As indicated, appended to the motion was a letter, dated January 24, 1974, from the state's attorney to the governor, the relevant portion of which reads:

"Kent County is involved in the prosecution of one Philippe Andre Sinclair and the Sinwellan Corporation, both of whom were indicted on October 30, 1973, in Kent County. The charges arose out of a transfer of Great Oak Lodge and Yacht Club.

"Certain events have transpired which have rendered me incapable of handling the prosecution. These events have been discussed with Clarence W. Sharp, Chief of the Criminal Division of the Attorney General's Office.

"I therefore, hereby request that the Attorney General's Office handle the prosecution of these cases."

Apparently relying, at least in part, on those two documents, the defendants concluded that they were going

---

1. Article V, § 3, of the Maryland Constitution permits the attorney general to prosecute actions on behalf of the State when directed to do so by the governor or the General Assembly. Additionally, Maryland Code (1974), Courts and Judicial Proceedings Article, § 2-102 (a), allows the court, in appropriate circumstances, to appoint "assistant counsel for the State." See also Code (1957, 1976 Repl. Vol.), Art. 10, § 41.

to be prosecuted by someone other than Cooper and Wadkovsky. This belief, however, was shattered at a pretrial conference conducted on April 4, 1974, when Cooper indicated, for reasons undisclosed by the record, that he and Wadkovsky intended to try the case. The defendants' reaction was to file, on April 11, 1974, a motion to, among other things, dismiss the information as well as disqualify Cooper and Wadkovsky from further participation in the prosecution. Attached to the motion was both a copy of the previously-quoted letter of January 24, and an affidavit by Sinclair which asserted:

"(1) That the State's Attorney, Richard Cooper, and the Deputy State's Attorney, Basil Wadkovsky, hold themselves out as a partnership in the practice of law in Chestertown, Maryland;

(2) That Basil Wadkovsky is or has acted as attorney for the Maryland National Bank and such Bank holds a note against Frank and Ethel Russell and Great Oak Estates Realty, Inc.;

(3) That State's Attorney Cooper is or has been attorney for Carrol Tilley who holds a note against the Russells and Great Oak Resort & Yacht Club, Inc.

(4) That the defendant, Philippe A. Sinclair during 1972 and 1973 was involved [in negotiations for] the purchase of Great Oak Resort & Yacht Club, Inc., and Great Oak Estates Realty, Inc., and the lands of Frank and Ethel Russell.

(5) That State's Attorney Cooper and Deputy State's Attorney Wadkovsky attempted to sell the notes they held to the defendant Philippe A. Sinclair in July and August of 1973. The matter was not consummated and thereafter in October of 1973, State's Attorney Cooper made presentment to the Grand Jury of Kent County and issued informations which are the subject matter of the present criminal actions; and the Grand Jury returned indictments.

(6) That State's Attorney Cooper in October of

1973 prior to any presentment to the Grand Jury, informed the defendant Philippe A. Sinclair that if defendant filed an appeal in the civil action entitled Great Oak Resort & Yacht Club, Inc., et al. v. Sinclair, et al., that he, State's Attorney Cooper, would indict the defendant.

(7) The appeal was taken on October 29, 1973.

(8) The Grand Jury was called into special session on the day following the appeal of the civil action and indictments were returned.

(9) Previous to the appeal being filed on behalf of defendant Sinclair, the Grand Jury had been given presentments but had not returned any indictments."

Although the two prosecutors did not controvert these allegations by way of counter-affidavits or otherwise, the trial judge, on April 17, 1974, denied the defendants' motion without a hearing, in pertinent part stating:

"The grounds for relief consist mostly of bald allegations. While it would appear therefrom that the State's Attorney and/or his deputy may have had or evinced an adverse or even antagonistic interest, there is nothing alleged or inferable that would indicate any conflict of interest or other posture which would in any way unduly prejudice the Defendants. The indictments represent action of the Grand Jury, rather than that of the prosecutor, and any improper motivation of the State's Attorney in filing presentments should be pursued civilly or tactically. In any adversary proceeding the opposing counsel must of necessity be hostile, and in the case of a prosecutor he could not perform competently otherwise, yet that does not necessarily indicate [a] ground for disqualification. Such seems to be the situation here." [2]

---

2. Although it appears that Sinclair was also indicted by the grand jury, the charges of which the petitioner was convicted were, in fact, contained in an information filed by State's Attorney Cooper.

When the trial commenced on April 22, 1974, in Caroline County, the State, which was represented by Cooper and Wadkovsky, nol-prossed all of the counts against Sinwellan Corporation and all but five of the counts against Sinclair. After the prosecution had presented its case, the defense attempted, but was denied permission, to call Cooper as a witness; consequently, the defense made the following proffer as to what it expected to elicit from the state's attorney:

"The proffer which we wish to make concerns the fact that as to the check from the Maryland National Bank, there is a letter from Mr. Cooper on behalf of the Maryland National Bank, asking for payment of that money. The next proffer . . . deals with the fact that this is an information by Mr. Cooper, not an indictment. The thrust of all of these proffers which I will make and as I have indicated, are in connection with the conflict situation. The third one is that the Maryland Bar Association [Ethics] Committee is meeting tomorrow to set a date for a hearing as to whether or not there is a conflict. The next proffer regards comments made to the newspapers by Mr. Cooper, as well as to Mr. Sinclair, regarding it is either you or me. The next proffer concerns that Mr. Cooper represented Mr. and Mrs. Carl Pitkevitiz, I think, along with Mr. Wadkovsky, against Sinwellan and Mr. Sinclair, and that letter I believe is dated May 10, 1973. In addition Mr. Cooper represented Maryland National Bank in connection with a judgment in the approximate amount of $20,000.00 against the Great Oaks Corporation and had numerous dealings with Sinclair and Sinwellan. In addition, there were numerous discussions and arguments that Mr. Sinclair had with Mr. Cooper at the time, or at a time when Mr. Sinclair was represented by counsel and out of the presence of the counsel in connection with everything from plea bargaining to the effect that if you pay some of

these bills we will drop most of the charges and things to that effect regarding plea bargaining. And finally that in light of this conflict Mr. Cooper sought and pressed for outrageous bail [($95,000)], perhaps the highest bail ever levied on the Eastern Shore, not even in murder cases is bail ever set this high and for these reasons we respectfully request that we should be allowed to call Mr. Cooper as a witness and that the Court should [not] have disqualified Mr. Cooper as a witness as the State's Attorney." [3]

Immediately thereafter, Sinclair, while testifying on his own behalf, was asked by his attorney whether he had spoken to Cooper with regard to the state's attorney's disqualifying himself from the case. Cooper objected and requested a proffer of the reply "because I think the answer is going to be embarrassing" and because it would involve a collateral matter. Judge Wise, however, denied Cooper's request and permitted the following colloquy to take place:

"MR. KIMMEL [(defense counsel)]: In connection with this case, Mr. Sinclair, did you ever have a

---

3. At the conclusion of this proffer, Judge Wise commented:

"The sum of all of the grounds for calling Mr. Cooper and presenting this evidence is the same basis as was submitted already in a written motion for the disqualification of both the State's Attorney and the Deputy State's Attorney; and which in turn I overruled or denied. I don't feel that there is a conflict in the ordinary sense of having adverse interests . . . . It is a consistent adverse interest of Mr. Cooper to the Defendant, Sinclair, whether excessive is something else again, but certainly it is [not] grounds for disqualification and does not present a position wherein he had [acted] as counsel or confidant of the Defendant, then turned around and prosecuted him. The conflict here is based upon what the defense claims was an interest adverse to him on the civil side and then an interest adverse to him on the criminal side. I don't believe that disqualifies the State's Attorney because as I said in ruling on the motion, of necessity, his attitude must be hostile and it must even indeed be aggressive if it is to be successful and I don't believe the State's Attorney can be [dis]qualified for no more than that. These things mount up to no more than [what] was either included in the motion or should have been. I don't propose to retry the matter and therefore the testimony of Mr. Cooper and of Mr. Wadkovsky too, for that matter, is declined and the proffer is refused."

conversation with Mr. Cooper regarding his prosecuting it?

MR. SINCLAIR: Yes I did. This case was supposed to be heard in late February. I had another matter to discuss with Mr. Cooper and I called him on the telephone and he told me that due to a letter he had written to the Governor resigning from this case due to certain events which had transpired .... he could no longer engage in the prosecution of this case. He told me at that time he believed he had a conflict of interest.

\* \* \*

MR. KIMMEL: Did he explain to you what this conflict of interest was?

\* \* \*

MR. SINCLAIR: We went into it very briefly and he told me that the Attorney General of Maryland would be handling the prosecution and he referred any matters, any problems that I may have to a Mr. Cain, I think, or told me he had spoken to a . . . a . . . a . . . I don't have a copy with me of the letter, but I did have a copy at that time . . . .

\* \* \*

MR. KIMMEL: Did he explain to you why he said he had a conflict?

MR. SINCLAIR: A — no he didn't exactly say why he had a conflict."

The jury returned a verdict of guilty on each of the five counts and thereafter Judge Wise pronounced sentence. On appeal to the Court of Special Appeals, the defendant's conviction was affirmed in an opinion authored by Judge Morton, in which Judge Lowe joined, and from which Judge Davidson dissented. *Sinclair v. State*, 27 Md. App. 207, 340 A. 2d 359 (1975). We granted certiorari to review the propriety of this conviction.

Having related the facts of this case, we now move to a

consideration of the powers and responsibilities of the office of state's attorney in Maryland. That office, which exists by virtue of the Maryland Constitution,[4] is of great significance as, regarding criminal prosecutions, its occupant is vested with much of the sovereign power of the State. However, we need not here extensively elaborate on the evolution, nature and powers of state's attorneys in Maryland, as that task was so recently and thoroughly performed by Judge Singley for this Court in *Murphy v. Yates*, 276 Md. 475, 348 A. 2d 837 (1975). It is clear that state's attorneys in this State have very wide and largely unreviewable discretion as to whether or not to pursue the prosecution of criminal offenses.[5] *Id.* at 489, 495. As our predecessors observed in *Brack v. Wells*, 184 Md. 86, 90, 40 A. 2d 319 (1944),

> "In . . . prosecutions of persons accused of crime, [the state's attorney] must exercise a sound discretion to distinguish between the guilty and the innocent. He must be trusted with broad official discretion to institute and prosecute criminal causes, subject generally to judicial control. The office is one not purely ministerial, but involves the exercise of learning and discretion. As a general rule, whether the State's Attorney does or does not institute a particular prosecution is a matter which rests in his discretion. Unless that discretion is grossly abused or such duty compelled by statute or there is a clear showing that such duty exists, . . . [his decision is controlling and he is accountable for

---

4. Article V, § 7, of the Constitution of Maryland mandates that there shall be an elected state's attorney in Baltimore City and in each of the several counties. Section 9 of that Article provides that the "State's Attorney shall perform such duties . . . as shall be prescribed by law . . . ." The General Assembly, in connection with this, enacted Maryland Code (1957, 1976 Repl. Vol.), Art. 10, § 34, which proclaims that state's attorneys shall "prosecute and defend, on the part of the State, all cases in which the State may be interested . . . ." *See* Murphy v. Yates, 276 Md. 475, 348 A. 2d 837 (1975).

5. The state's attorney's decision whether to prosecute, an exercise of his "awesome discretionary power," Murphy v. Yates, *supra*, 276 Md. at 495, may well have a great impact on the person involved, as not only will that person's liberty and property be at stake, but also whether he acquires the lasting stigma of a criminal record.

it to no one other than the electorate.]" (Citation omitted.) *See Ewell v. State*, 207 Md. 288, 296, 114 A. 2d 66 (1955).

Sinclair, however, does not argue that State's Attorney Cooper and Deputy State's Attorney Wadkovsky do not have broad discretion with regard to pursuing or terminating prosecutions. Rather, the petitioner asserts that he was deprived of the impartial exercise of that discretion, and thus of due process and a fair trial, because Cooper and Wadkovsky, due to their representation of various parties as private counsel in civil legal matters involving Sinclair and the Sinwellan Corporation, had an interest in the outcome of the criminal trial which conflicted with their obligations as prosecutors and colored the employment of their official discretion.

As we indicated earlier, this Court has not previously been presented with this precise problem; however, we have had occasion to decide cases which (although not involving state's attorneys) may be considered to be around its edges and to involve the same general principles. For instance, over 50 years ago, in *Derlin v. Derlin*, 142 Md. 352, 364, 121 A. 27 (1923), this Court frowned upon a situation in which an attorney represented two conflicting interests, and quoted with approval the following language from 2 R.C.L. 974, ¶ 51:

"An attorney at law who has once been retained and received the confidence of a client, is thereafter disqualified from acting for any other person adversely interested in the same general matter, however slight such adverse interest may be. Nor does it matter that the intention and motive of the attorney are honest. This rule is a rigid one, and designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the

interest which he should alone represent." *See Rippon v. Mercantile-Safe Dep.*, 213 Md. 215, 223, 131 A. 2d 695 (1957).

More recently, in *Montgomery County v. Walker*, 228 Md. 574, 580, 180 A. 2d 865 (1962), a case involving the unusual circumstance of a party arguing that a public official should not have disqualified himself from considering a zoning case, we concluded that public policy requires "that no public officer who has a personal or pecuniary interest, direct or indirect, in the outcome of a case should participate in that matter." Additionally, as pointed out by Judge Davidson in her lucid and, we think, persuasive dissent in this case, *Sinclair v. State, supra,* 27 Md. App. at 227-28, the Court of Appeals, by way of dictum, suggested in *Coblentz v. State,* 164 Md. 558, 570-71, 166 A. 45 (1933), that, although there is no statutory or other requirement that grand jurors be unprejudiced, nevertheless, if a grand juror has a pecuniary interest in a prosecution, such that he could gain or lose by a conviction or acquittal, he might then be disqualified. *Cf. Hopkins v. State,* 24 Md. App. 53, 59-68, 329 A. 2d 738 (1974), *cert. denied,* 274 Md. 728 (1975). The job of grand jurors, of course, is to decide whether to bring criminal charges by way of an indictment; similarly, one of the state's attorneys' responsibilities is to decide whether to bring criminal charges by way of an information. These decisions seem to suggest what we think is the controlling principle of this case: if a prosecutor has, or would clearly appear to a reasonable person having knowledge of the pertinent facts to have, any pecuniary interest or a significant personal interest in a civil matter which may impair his obligation in a criminal matter to act impartially toward both the State and the accused, then he is, on the basis of this State's public policy, disqualified from initiating or participating in the prosecution of that criminal cause.[6] The corollary to this principle is that if a prosecutor

---

6. Since this principle is dictated by this State's public policy, we need not, and specifically do not, reach the issue of whether it is equally required as a matter of constitutional due process. We note that in a growing number of Maryland jurisdictions the private practice of law by state's

who should have been disqualified is involved in his official capacity in the bringing of charges (by way of indictment or information) against the defendant, then upon timely objection [7] the charges will be dismissed, or if such a prosecutor participates in his official capacity in the prosecution of the case, then upon timely objection any resulting conviction will be reversed and a new trial ordered.[8]

Although the principle of law we have just announced is only suggested by prior Maryland cases, there is support for it of a more direct nature in the case law of our sister states. *Cf.* Annot., 31 A.L.R.3d 953 (1970). In the criminal case of *State v. Detroit Motors*, 62 N.J. Super. 386, 163 A. 2d 227 (L. Div. 1960), for instance, the accused was indicted for a crime at a time when the prosecutor was a member of a law firm, another member of which was representing the defendant in a civil suit regarding the same subject matter and involving similar facts. The trial court dismissed the indictments after making the following apt observations:

"The principle long ago was recognized that no man can adequately or properly serve two masters, and this is the chief subject matter of Canon 6 [(now Canon 5)] of the Canons of Professional Ethics. It is inconsistent with the public interest and welfare

---

attorneys is now prohibited or regulated by statute. *See* Code (1957, 1976 Repl. Vol.), Art. 10, § 40.

7. We reiterate that the appellant in this case made a timely objection to the state's attorneys' participation in his prosecution; had he not done so, while having knowledge of sufficient facts to have reasonably alerted him to the existence of a conflict, the result of this case may have been different. *See* People v. Jiminez, 187 Colo. 97, 528 P. 2d 913, 915-16 (1974).

8. We, unlike the trial court in this case, *see* p. 248, *supra,* conclude that the defendant need not prove actual prejudice because, on the basis of public policy, it will be presumed to exist as a matter of law. *See* State v. Detroit Motors, 62 N.J. Super. 386, 163 A. 2d 227, 231 (L. Div. 1960). In connection with this, we note that when, in Coblentz v. State, 164 Md. 558, 569, 166 A. 45 (1933), this Court held that an accused is entitled to have an indictment quashed if an unauthorized person appeared before the grand jury, we specifically stated that he could do so irrespective of whether the defendant could establish actual prejudice. *But cf.* Keyes v. State, 236 Md. 74, 80-81, 202 A. 2d 582 (1964) (master who had waived juvenile court jurisdiction over defendant later became assistant state's attorney and prosecuted the defendant; conviction affirmed as no prejudice because no facts relating to the charge were disclosed to the master).

for any law enforcement officer directly or indirectly to represent any person involved in a criminal matter, except the State, or receive any personal profit or gain as the result of the arrest, conviction or acquittal of one charged with the infraction of the law or in connection with the filing of any such charge. . . . The books are replete with cases indicating that any appearance of evil in connection with the administration of public office should and must be avoided; and particularly is this true of those offices involved in the enforcement of the law.

\* \* \*

"To permit a prosecuting attorney to have an interest of any nature whatsoever in any civil proceedings, directly or indirectly, and which proceedings involve similar facts or the same subject matter as a criminal prosecution then pending or thereafter initiated, can only give rise to suspicion concerning and relating to the motives of the prosecuting attorney involved, and bring such office into disrepute with the public." 163 A. 2d at 229-31.

In another criminal case, *State v. Tate*, 185 La. 1006, 171 So. 108 (1936), the defendant, who was convicted of destroying a cotton gin with dynamite, contended that his motion to disqualify the district attorney from participating in the case should have been granted because the prosecutor, as private counsel, also represented a number of insurance companies in civil suits they had brought against the defendant for damages arising out of his alleged cotton gin-dynamiting activities. The Supreme Court of Louisiana agreed, and annulled Tate's conviction, stating that:

"In conducting a criminal case the prosecuting attorney must be fair and impartial, and see that defendant is not deprived of any constitutional or statutory right, because he is a quasi judicial officer.

"This rule, founded on justice and fair dealing, we think is intended not only to restrain the offer of illegal evidence or the violation of the orderly rules of procedure by prosecuting officers, but also to require their recusation in those cases in which their interest, directly or indirectly, may be such as to cause them to sacrifice impartial justice to personal advantage.

\* \* \*

"The district attorney is a quasi judicial officer. He represents the State, and the State demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man escapes. Therefore he should not be involved or interested in any extrinsic matters which might, consciously or unconsciously, impair or destroy his power to conduct the accused's trial fairly and impartially." 171 So. at 112 (citations omitted).

And in an attorney-disciplinary case, in which a prosecutor allowed his private practice to conflict with his public obligations, the Supreme Court of our neighboring state of Delaware expressed the same principle:

"A lawyer cannot represent conflicting interests, because he owes to every client the duty of undivided loyalty. In civil cases he may ordinarily choose between two clients whose interests conflict, with full disclosure when required. But a public prosecutor permitted to engage in private practice has no such freedom of choice. His private interest must yield to the public one.

\* \* \*

"Now, the exercise of [discretionary] power by the prosecuting officer — the decision to prosecute or not to prosecute . . . — involves the performance of one of the most difficult and delicate functions of

his office. It requires the weighing and balancing of interests that may, and often do, conflict — those of the public and those of the victim . . . . One thing is certain. The prosecuting officer cannot perform this function — he cannot discharge his public obligation — if his personal interests are involved. And his representation of the [victim] at once gives him a personal interest in the matter that disables him from the proper performance of his official duty." *In re Ridgely,* 48 Del. 464, 106 A. 2d 527, 530-31 (1954).

When faced with a situation in which the official obligations and private interests of a prosecutor conflicted, the other courts of this nation, with few exceptions, have taken positions consistent with what we have said here. *See, e.g., Ganger v. Peyton,* 379 F. 2d 709 (4th Cir. 1967); *People v. _____,* 162 Colo. 174, 427 P. 2d 330 (1967) (per curiam); *People ex rel. Colorado Bar Ass'n v. _____,* 90 Colo. 440, 9 P. 2d 611 (1932); *In re Guardianship of Angell,* 26 Ill.App.2d 239, 167 N.E.2d 711 (1960); *State v. Jones,* 306 Mo. 437, 268 S. W. 83, 85-86 (1924); *In re Truder,* 37 N. M. 69, 17 P. 2d 951 (1932); *People v. Krstovich,* 72 Misc. 2d 90, 338 N.Y.S.2d 132 (Greene County Ct. 1972); *In re Williams,* 174 Okla. 386, 50 P. 2d 729 (1935); *Hall v. State,* 24 Okla. Crim. 197, 217 P. 229 (1923); *State v. Basham,* 84 S. D. 250, 170 N.W.2d 238 (1969); *Hosford v. Eno,* 41 S. D. 65, 168 N. W. 764 (1918); *Callahan v. Jones,* 200 Wash. 241, 93 P. 2d 326 (1939). *But see Commonwealth v. Dunlap,* 233 Pa. Super. 38, 335 A. 2d 364 (1975); *State v. Goodwin,* 250 S. C. 403, 158 S.E.2d 195 (1967). See in addition cases in which courts have disapproved of an attorney, who after representing an individual, subsequently joined the state's staff and prosecuted his former client on charges which were related to the subject matter of the employment. *State v. Latigue,* 108 Ariz. 521, 502 P. 2d 1340 (1972); *People v. Gerold,* 265 Ill. 448, 107 N. E. 165, 175-78 (1914); *State v. Chambers,* 86 N. M. 383, 524 P. 2d 999 (Ct. App.), *cert. denied,* 86 N. M. 372, 524 P. 2d 988 (1974); *Steeley v. State,* 17 Okla. Crim. 252, 187 P. 821, 822-24 (1920).

Furthermore, although we explicitly state that a violation of the Code of Professional Responsibility by a prosecuting attorney will not alone necessarily require the reversal of the criminal conviction involved, we make mention of the fact that

> "The professional ethical obligations of an attorney, as long as he remains a member of the bar, are not affected by a decision to pursue his livelihood by practicing law, entering the business world, becoming a public servant, or embarking upon any other endeavor. If a lawyer elects to become a business man, he brings to his merchantry the professional requirements of honesty, uprightness, and fair dealing. Equally, a lawyer who enters public life does not leave behind the canons of legal ethics." [9] *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 550, 318 A. 2d 811 (1974).

Additionally, we think it relevant that § 1.2 (a) of The A.B.A. Project on Standards For Criminal Justice, Standards Relating To The Prosecution Function (Approved Draft, 1971) cogently declares that "A prosecutor should avoid the appearance or reality of a conflict of interest with respect to his official duties." [10] The commentary to that section adds that "It is of the utmost importance that the prosecutor avoid participation in a case in circumstances where any implication of partiality may cast a shadow over the integrity of his office." In sum, there is ample support, of

**9.** In this regard attention is directed to Canons 5, 7 and 9 of the Code of Professional Responsibility as well as to the Ethical Considerations and Disciplinary Rules related to those canons, and particularly to DR 7-105 (A), which reads: "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."

**10.** Although we recognize that the A.B.A. "standards are intended as guides for the conduct of lawyers and as the basis for disciplinary action, not as criteria for the judicial evaluation of prosecutorial misconduct to determine the validity of a conviction . . .," we, nevertheless, find them to be a relevant consideration. *See* The A.B.A. Project On Standards For Criminal Justice, Standards Relating To The Prosecution Function § 1.1 (e) (Approved Draft, 1971).

several varieties, for the principle of law we have announced in this opinion.

Having determined what the standard is, we again turn to the record which is before us at this time. Upon examination, we find a record which bristles with unresolved nonfrivolous allegations of specific prosecutorial conflicts of interest. Although these allegations, as made, should compel inquiry, and such investigation is all the more required since the state's attorney at one time attempted to disqualify himself from participating in the prosecution, the trial judge did not factually determine, *see Beshore v. Town of Bel Air*, 237 Md. 398, 408, 206 A. 2d 678 (1965), *quoting Montgomery County v. Walker*, 228 Md. 574, 580, 180 A. 2d 865 (1962), whether there were such conflicts. Because the validity of the petitioner's conviction, including the information filed against him, turns on this question of fact, which must be resolved by the trial judge and not by this Court, we will remand this case to the Circuit Court for Caroline County for further proceedings.

What we have said here in no way alters our allegiance to the principle that when a state's attorney determines that the public interest requires prosecution, it is his duty to zealously seek to convict those guilty of crime; however, as we have attempted to make plain in this opinion, his decision to prosecute, just like the methods he employs to procure conviction, must be in accord with the fair and impartial administration of justice, untainted by any contaminating influence.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with direction that it remand the case to the Circuit Court for Caroline County for further proceedings in accord with this opinion.*
>
> *Costs in this Court as well as in the Court of Special Appeals to abide the result.*

*Smith, J., concurring:*

I concur in the result insofar as it is based upon a defect in the accusatory process. It is my belief that any expression beyond that should be left to another case on another day.