## E. B. BAUM v. STATE.

No. A-4370. Opinion Filed May 29, 1925.
Rehearing Denied Jan. 26. 1926.
(242 Pac. 576.)

Rummons & Hughes, for plaintiff in error.

The Attorney General and John Barry, Asst. Atty. Gen., for the State.

BESSEY, P. J. E. B. Baum, plaintiff in error, here referred to as the defendant, was by verdict of a jury found guilty of embezzlement, with his punishment fixed at imprisonment in the penitentiary for a term of one year and to pay a fine of $500. From the judgment on this verdict he appeals.

On the 30th day of July, 1920, and prior thereto, the defendant was the cashier of the Bank of Gotebo, at Gotebo, Okla. At this time the defendant negotiated a loan in the principal sum of $6,000, as evidenced by a promissory note in which five makers, representing the Farmers' Cooperative Association of Gotebo, promised to pay to E. B. Baum at the Bank of Gotebo, six months after date, the sum of $6,000. The defendant required the makers of this note to pay the interest, amounting to $240, in advance; the check for this interest being made payable to the "order of interest on $6,000, Bank of Gotebo." This check was deposited to the individual checking account of the defendant, which was carried in the name of Baum and West, and the proceeds checked out and used by the defendant personally. The $6,000 note was rediscounted and sold to the Southwest National Bank of Oklahoma City, indorsed on the back, "E. B. Baum." The records of the Bank of Gotebo showed that the makers of the note were credited with $6,000 and the Southwest National Bank of Oklahoma City charged with that amount.

There was evidence introduced tending to show that the defendant, while cashier of this bank, made several other loans of this character, collecting the interest on each in advance and placing the interest so collected in his own personal account at the bank and using it personally.

The facts as stated were admitted by the defendant. His defense was that the Bank of Gotebo was capitalized for only $25,000, and that the bank at this time had negotiated loans to the limit prescribed by law, and that this loan was a personal one, negotiated by him individually through the Southwest National Bank, upon his personal financial standing as a banker.

The defendant assigns as error the admission of testimony relating to other like transactions, and the court's instructions relative thereto. This assignment of error is

without merit for two reasons. In the first place, the defendant sought to justify by showing that it was the custom of the officers of this bank to negotiate personal loans in this manner when the aggregate amount of the bank's outstanding loans reached or exceeded the limit prescribed by law. This was his sole and only defense, as shown by his own testimony. The evidence touching upon this feature of the case was for his own advantage, or relied upon by him for that purpose, and he will not now be heard to complain thereof.

Further, the purpose of the state's introduction of the testimony upon this feature of the case was properly limited by the court in instruction No. 5, as follows:

"You are instructed that evidence has been introduced in this case which tends to show the commission by the defendant of other offenses than the offense for which he is now on trial. And in this connection you are instructed that such evidence has been admitted for your consideration for the sole purpose of throwing light upon and showing the intent and purpose of the defendant in connection with his acts in the offense charged, if any, and as to whether or not the offense charged was a part of a system to defraud said bank, if you find it does have such effect, and for no other purpose, and you are instructed that such evidence is to be considered by you for no other purpose."

The defendant claimed justification and immunity from prosecution on the ground that, since the bank of which he was cashier could not make loans beyond a fixed limitation, under the provisions of the statutes, when such limitations had been reached, in order to accommodate the customers of the bank, he used the bank as a vehicle through which to negotiate loans from other banks for his own personal profit. It may be conceded that within proper bounds the cashier of a bank may personally engage in business transactions for personal profit, so long as the interests of the bank he serves are not jeopardized or interferred with. But this privilege could not be construed as

extending to cases in which the cashier, or other officers of a bank, engaged in a rival loan business involving legal obligations on the part of the bank.

This double method of making loans by officers of banks, some for the benefit of the bank and some for private profit, amounts to a fraud against the interests of the stockholders and depositors of the bank. Under such circumstances the gravy inevitably runs to the private end of the platter. When bankers so forget the duties of their trust, it usually follows that, when financial troubles come to the bank, the bad loans are found to be the property of the bank, while the profits of the good loans have been appropriated privately by its officers. Bank officers who so carry on a banking business are actually, or potentially, robbers from the inside.

Whether the particular loan here involved was an individual loan made in good faith was an issue of fact for the jury. There is ample evidence appearing in the record to support the state's contention that it was not such an individual loan made in good faith, and that the private appropriation of the interest by the defendant constituted embezzlement, as alleged in the accusation.

The defendant was permitted to testify that after the prosecution was instituted he made efforts and an offer to restore the money alleged to have been embezzled. This testimony was afterwards withdrawn from the jury. In Fulkerson v. State, 17 Okla. Cr. 103, 189 P. 1092, the court said:

"A proffer of evidence that the defendant was anxious and willing to restore the funds alleged to have been embezzled was properly excluded. Such evidence would not constitute a defense to the charge, nor be proper to be considered in mitigation of the punishment."

The rule is different where restitution is offered, in whole or in part, before the commencement of the prose-

cution. In such case the offer may be shown and considered in mitigation of punishment.

Finally, it is claimed that the evidence is insufficient to support the verdict. The evidence shows that this defendant had been operating a clever scheme to use the bank he represented to enable him to rediscount with other bank notes for large sums, retaining the interest for himself, and so depriving the bank on whose credit he was operating from realizing any profit whatever from many of these transactions. This scheme was a plain evasion of the banking laws of this state. In our opinion the fact that he indorsed this note, and possibly other notes, individually, makes no difference. The rediscounting bank knew he was cashier of the Gotebo bank, and undoubtedly regarded the obligation as an obligation of the bank, and not of the cashier as an individual.

The judgment of the trial court is affirmed.

DOYLE, J., concurs.

EDWARDS, J., certifies his disqualification and does not participate.