62 N.J. Super. 386 (1960)
163 A.2d 227
THE STATE OF NEW JERSEY
v.
DETROIT MOTORS, A NEW JERSEY CORPORATION, MORRIS ROTMAN, ALSO KNOWN AS MORRIS ROTH, ERNEST GRAZIANI AND DONALD ORLOWSKI, ALSO KNOWN AS DON ORLEY, DEFENDANTS. THE STATE OF NEW JERSEY
v.
DETROIT MOTORS, A NEW JERSEY CORPORATION, MORRIS ROTMAN, ALSO KNOWN AS MORRIS ROTH, ERNEST GRAZIANI, JOHNNY DOE AND BILL C., BEING FICTITIOUS, TRUE NAME UNKNOWN, DEFENDANTS.
Superior Court of New Jersey, Law Division  Criminal.
Decided July 20, 1960.
*388 Mr. Joseph Schoenholz appeared for the defendants Detroit Motors and Morris Rotman.
Mr. Ralph DeVita, Assistant Prosecutor, appeared for the State (Mr. H. Douglas Stine, Union County Prosecutor, attorney).
BARGER, J.C.C. (temporarily assigned).
This is a motion to dismiss indictments Nos. 357 and 358, January session, 1957 term, by the defendants Detroit Motors and Morris Rotman. The motion is based on the following two grounds:
(1) In substance, that the circumstances set forth indicate a breach of confidence in the attorney and client relationship existing between the firm of which former Prosecutor H. Russell Morss, Jr., was a member and these defendants, who were represented by such firm on a consultation retainer basis generally, and in particular in a civil action involving the same facts and subject matter as indictment No. 357, and generally on a consultation basis as above indicated as to indictment No. 358, during a period prior to the presentation of the matters to the grand jury and presentation of the indictments to the court. And further, that the circumstances indicate a conflict of interest situation as provided in Canons of Professional Ethics, Canons 6 and 37.
(2) There was no evidence before the grand jury from which such body could determine that a crime had been committed by these defendants or that the State had prima facie evidence connecting these defendants thereto.
The indictments charge the defendants with obtaining money under false pretenses, being violations of N.J.S. 2A:111-1 and 2A:111-5. There are other defendants named in the indictments not involved in this motion.
H. Russell Morss, Jr., Esq., was the duly appointed Prosecutor of Union County from on or about February 23, 1953 to and including April 7, 1958, these indictments being presented to the court on the last day of his service as such official; and as a member of the bar he was a member of *389 the law firm of O'Connor, Morss and Mancini, Esqs., having offices in the City of Elizabeth, upon all of the relevant and material dates herein cited.
As a result of complaints received from various sources by the prosecutor's office during his term of office concerning the practices engaged in by used car dealers, relating to the purchase and sale of such motor vehicles in Union County, Mr. Morss, as such prosecutor, did in or about June 1957 assign one of his assistants, Richard P. Muscatello, Esq., to take charge of all such complaints and of an investigation to be made to secure and compile data, information and evidence relating to such practices for contemplated future presentation thereof at the proper time to the grand jury.
The data, information and evidence assembled as a result of the investigation referred to was presented to the grand jury in the spring of 1958, and as a result these and other indictments were presented to the court on April 7, 1958.
At some date, about March 1958, and prior to the presentation of the evidence to the grand jury, Mr. Morss obtained knowledge that one of the dealers being investigated was the defendant Detroit Motors, and he further learned, about this time, that a member of his firm, and being one of his partners, represented Detroit Motors and perhaps an officer or officers thereof generally, and in particular in a civil cause involving similar facts and the subject matter of indictment No. 357. There is no indication that there was a civil cause pending involving similar facts or the subject matter of indictment No. 358. A partner of the firm of which Mr. Morss was a member had generally represented the defendant Detroit Motors and some of its officers from sometime in the latter part of 1956 or early 1957 to the latter date referred to, on a general retainer basis and in a general manner. When Mr. Morss learned that his firm represented the dealer mentioned he informed the assistant prosecutor, then in charge of the investigation, of the situation and instructed him not to discuss any matters relating to the investigation referred to, insofar as the Detroit Motors was *390 concerned, with him, and the file in the case was not to be made available to him, and such investigation as to such defendant was to be handled totally independent of him. About this time there was a substitution and another assistant prosecutor was assigned to the investigation because of the resignation of Mr. Muscatello. Also, Mr. Morss made a request of the member of his firm representing Detroit Motors and handling the civil action to terminate the representation of such defendant or any of its officers or employees in the civil action or any other matters and to have another attorney substituted, to be chosen by the defendants mentioned, and this was accomplished early in April of 1958.
The motion is based on the affidavit of Morris Rotman which generally states the facts concerning the representation by the firm on general matters relating to the business, and in particular in the civil action referred to. The prosecutor has filed an affidavit by Mr. Morss indicating that during the investigation referred to and the presentation of the evidence to the grand jury, insofar as his recollection permits, he did not at any time secure any information from his partner or confer with any member or members of the grand jury relating to any information or evidence submitted against these defendants; and further, that he did not convey or transmit any information or evidence of any nature whatsoever to any member of his staff or to the grand jury relating to the affairs of the defendants mentioned which may have been conveyed to him from any member of his firm, because until the date herein mentioned he had absolutely no knowledge of or information relating to the representation of the defendants by a member of his firm, and that immediately upon securing such knowledge and information he took the steps above indicated. From the circumstances it is indicated that there was no intent on the part of Mr. Morss, as the then prosecutor, consciously to become involved, directly or indirectly, in any breach of confidence or conflict of interest situation, and immediately, as indicated, he took the steps that appeared to him to be *391 proper and necessary to avoid any inference or implication of any such breach of confidence or conflict of interest. The defendants do not charge Mr. Morss with any improper intent, motive or purpose, but generally claim that because of the circumstances which arose, as indicated, they are prejudiced because the circumstances themselves give rise to an inference of a breach of confidence of the attorney-client relationship and a conflict of interest situation, without further inquiry, and that under the authorities herein cited they are entitled to a dismissal of the indictments.
After presentation of the evidence to the grand jury the indictments took the usual course of being approved as to form by the clerk of the grand jury and were then signed by Mr. Morss, as the prosecutor, and by the then foreman of the grand jury and presented to the court.
The facts do not indicate that there was any improper intent or motive on the part of the defendants in retaining the firm mentioned, as it was retained generally several months prior to the investigation initiated by Mr. Morss as prosecutor.
The prosecutor is a legal officer of the State, representing the State and the county, and he is a law enforcement officer with an interest in seeing that the innocent are protected, that the laws are enforced, and that the persons guilty of violations of the law are punished, and generally that justice is done. This is indicated by Canons of Professional Ethics, Canon 5, and the duties and obligations of this office are comprehensively commented upon in State v. Winne, 12 N.J. 152 (1953); Earl v. Winne, 14 N.J. 119 (1953); Callahan v. Jones, 200 Wash. 241, 93 P.2d 326, 123 A.L.R. 1178 (Sup. Ct. 1939). The principle long ago was recognized that no man can adequately or properly serve two masters, and this is the chief subject matter of Canon 6 of the Canons of Professional Ethics. It is inconsistent with the public interest and welfare for any law enforcement officer directly or indirectly to represent any person involved in a criminal matter, except the State, or *392 receive any personal profit or gain as the result of the arrest, conviction or acquittal of one charged with the infraction of the law or in connection with the filing of any such charge. The power or authority of the State should never be used to discover or uncover facts or evidence which might result in private profit or gain, in any manner whatsoever, to the official vested by law with such power or authority, or to the profit of any of those associated with him. The books are replete with cases indicating that any appearance of evil in connection with the administration of public office should and must be avoided; and particularly is this true of those offices involved in the enforcement of the law. Callahan v. Jones, supra.
Many states have, by statute, restricted the private practice of a prosecuting attorney, as indicated in the cases cited in this opinion. However, there is no such statute in this State. It appears, however, as pointed out in State v. Winne, supra, that there are certain standards and restrictions imposed, inherent and basic in the very nature of the office itself.
The general rule as to the participation of a prosecuting attorney in general practice has been well stated in the following language:
"A prosecuting attorney may engage in private practice where not prohibited by statute, but he should not take a private position antagonistic to that of, or conflicting with, his public duty." 27 C.J.S. District and Prosecuting Attorneys § 12(9) p. 668.
The cases found in this country on the point involved here generally fall within two distinct classifications:
(a) Those in which the prosecuting attorney has an interest in a civil proceeding based on similar facts and generally the same subject matter as the criminal prosecution.
(b) Those cases arising as a result of the appointment or resignation of the prosecutor, and where he has represented one or more of the parties and thereafter represents another. See Ward v. State, 33 Okl. Cr. 182, 242 P. 575 *393 (Crim. Ct. App. 1926); State v. Leigh, 178 Kan. 549, 289 P.2d 774 (Sup. Ct. 1955); People v. Gerold, 265 Ill. 448, 107 N.E. 165 (Ill. Sup. Ct. 1914); People ex rel. Livers v. Hanson, 290 Ill. 370, 125 N.E. 268 (Sup. Ct. 1919); Hosford v. Eno, 41 S.D. 65, 168 N.W. 764 (Sup. Ct. 1918); Harmar Drive-In Theatre v. Warner, 239 F.2d 555 (2 Cir. 1956); Callahan v. Jones, supra. State v. Robbins, 221 Ind. 125, 46 N.E.2d 691 (Sup. Ct. 1943); Lasky Bros. of W. Va. v. Warner Bros. Pictures, Inc., 224 F.2d 824 (2 Cir. 1955).
The rule of privilege and confidence, the subject matter of Canon 37 of the Canons of Professional Ethics, has always been strictly enforced by the courts, as indicated in People v. Gerold, supra, in which case it was held that an attorney who once represented a city treasurer could not assist in the prosecution of the indictment against him. The attitude of the court is expressed in this language, at page 177:
"This rule [of privilege] has been so strictly enforced that it has been held that an attorney, on terminating his employment, cannot thereafter act as counsel against his client in the same general matter, even though while acting for his former client he acquired no knowledge which could operate to his client's disadvantage in the subsequent adverse employment [citing numerous cases]. If this is the rule in civil cases, the law will not be less strict in criminal proceedings, especially as to the duty in this regard resting upon counsel for the state * * *. The canons of ethics of the American Bar Association * * * are in accord on this subject with the rule just stated."
To permit a prosecuting attorney to have an interest of any nature whatsoever in any civil proceedings, directly or indirectly, and which proceedings involve similar facts or the same subject matter as a criminal prosecution then pending or thereafter initiated, can only give rise to suspicion concerning and relating to the motives of the prosecuting attorney involved, and bring such office into disrepute with the public. The principle indicated, about serving two masters, is competently covered in Ward v. State, supra, in the following language [33 Okl. Cr. 182, 242 P. 576]:
*394 "Where one appears for an accused as his attorney, whether he be paid for his services or not, and whether he is informed by his client of the facts surrounding his defense or not, such appearance precludes him from subsequently appearing or participating on the other side of the same case. The rule must be rigidly adhered to. Courts owe a duty to themselves, to the public, and to the legal profession. The due and orderly administration of justice, the honor of the legal profession, and the dignity of the court forbid such practice. The attorney must not transgress, and the court must not permit it to be done. An observance of the rule will prevent the dishonest practitioner from fraudulent conduct and will prevent the honest practitioner from putting himself in a questionable position. It was the duty of the trial court to have forbidden the appearance. We do not impute to the attorneys here any dishonest purpose, but a conviction under such circumstances, irrespective of the guilt of the defendant, cannot be permitted to stand."
The defendants do not allege or claim any improper intent or motive on the part of the former prosecutor, nor does this court intend to impute to such prosecutor any such improper conduct on his part. In fact, as soon as he had knowledge of the situation he properly moved to terminate any conflict of interest or breach of confidence situation then existing. This court can only suggest one further step that might have been taken to completely indicate full fairness and justice, and that would have been for the prosecutor to have turned this matter over to someone designated by the Attorney General, after a proper request for such assistance, as suggested in Earl v. Winne, supra.
The above rules appear to be inviolate regardless of intent or motive. This is apparently so because in any given case, except a very unusual one, it would not be possible for the defendant to prove any such breach of confidence or resulting prejudice. The circumstances by their very nature give rise to possibilities and inferences which should be avoided in the enforcement of the law. Public policy appears to dictate that criminal prosecutions must be totally free of any imputation of improper influence or motive. There is inherent in the circumstances a prejudicial atmosphere affecting the indictments which is to be avoided.
*395 The second ground appears abandoned by the defendants, since no evidence has been submitted to this court on that ground. The motion is accordingly dismissed as to that ground.
For the reasons indicated this court is satisfied that the indictments cannot stand insofar as these defendants are concerned, and the motion to dismiss on the first ground referred to herein is granted. The court suggests the resubmission of the evidence to the grand jury, since the atmosphere indicated as objectionable is no longer present.
An order may be presented accordingly.