524 P.2d 999

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Michael Edward CHAMBERS and Joseph X. White, Defendants-Appellants.**

**No. 1194.**

Court of Appeals of New Mexico.

June 19, 1974.

Certiorari Denied July 25, 1974.

William S. Martin, Jr., Silver City, Michael J. Brown, Brown & Finn, Tucson, Ariz., for defendants-appellants.

David L. Norvell, Atty. Gen., Dee C. Blythe, Andrea Buzzard, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

OPINION

SUTIN, Judge.

Defendant was convicted and sentenced for unlawful delivery of marijuana. Section 54–9–3, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, 1971 Supp.). He appeals. We reverse.

(A) *Failure of Trial Court to Disqualify Grant County District Attorney's Office*

On November 14, 1972, at 9:15 a. m., in court chambers, before trial commenced, defendant moved "that the District Attorneys' of Grant County be disqualified from prosecuting this case on the grounds that there now exists a conflict of interest because of Mr. [Asa] Kelly's employment in the District Attorney's Office and he was formerly employed as counsel for the defendants in this case."

The record shows that on November 11, 1971, the information was filed against defendant. On November 15, 1971, Asa Kelly, attorney for defendant, accepted service of the criminal information on behalf of defendant. On March 20, 1972, Asa Kelly and Michael J. Brown represented defendant at the arraignment and plea. On this date, defendant was served with an amend-

ed information. (The amended information does not appear in the record.) On June 19, 1972, Brown and Kelly filed a motion to quash the jury array. At the time of the first trial, June 20, 1972, Kelly and Brown proceeded through the trial. It ended in a mistrial.

On August 16, 1972, three months before trial, Asa Kelly was appointed an Assistant District Attorney for the Sixth Judicial District. On November 10, 1972, Kelly filed a motion to withdraw as attorney for defendant and with permission of defendant, stating "That he is no longer able to act due to adverse interests which have arisen during the pendency of the above action." Permission to withdraw was approved effective November 14, 1972, the date of the second trial. Shortly before trial, William S. Martin, Jr. was appointed to represent defendant.

The trial court ruled that Mr. Kelly would not be permitted to associate as counsel for the State. Defendant did not contend that Mr. Kelly divulged any privileged communications. He contended that whether or not Kelly communicated with the assistant district attorney prosecuting the case, "The appearances give rise to suspicion that he may have, the appearances do not look good, * * * that the law must be above suspicion in the prosecution of criminal cases where individual liberty is involved. The appearance of evil in prosecution of cases is perhaps just as bad as evil itself."

The trial court denied the motion to disqualify the district attorneys of Grant County because he saw nothing in any ground advanced that would cause him to feel that there is any impropriety on the part of the district attorney's office to continue in this case, nor anything that is prejudicial to the rights of the defendant.

Defendant now contends on appeal that the failure of the trial court to disqualify the Grant County district attorney's office on the basis of conflict of interests was reversible error.

This is a matter of first impression in New Mexico.

We are faced with the situation where an attorney has represented the defendant in his first trial, later becomes a member of the district attorney's staff, and then recuses himself from participation in the second trial. Does the district attorney's office have to divorce itself from the prosecution of the second trial? The authorities are divided.

"It is at once self-evident we deal here not with a technical error, but rather with a delicate subject relating to conduct of the bar, the administration of justice, and basic rights of an accused." State v. Orozco, 202 N.W.2d 344, 345 (Iowa 1972).

State v. Latigue, 108 Ariz. 521, 502 P.2d 1340 (1972) directly supports defendant. A deputy public defender had acted as co-counsel for the defendant in a criminal case. He received confidential communication from the defendant, and he had access to all records and information pertaining to the defense. Subsequently, he became chief deputy county attorney but took no part in the prosecution. The question at issue was whether the county attorney's office was precluded from prosecuting the defendant. The court held it was.

The court pointed out that a county attorney's chief deputy had supervisory powers and duties over the assistant county attorney who was prosecuting; that the county attorney's office, if efficient, has frequent staff meetings to discuss cases, and even without meetings, staff members often talk about their cases with one another. The court said:

We do not rest our decision only on the fact that the attorney involved here is the County Attorney's chief deputy; even if he were not, that office would have to divorce itself from the prosecution in this case, because even the appearance of unfairness cannot be permitted. What must a defendant and his family and friends think when his attorney leaves his case and goes to work in

the very office that is prosecuting him? Even though there is no revelation by the attorney to his new colleagues, the defendant will never believe that. Justice and the law must rest upon the complete confidence of the thinking public and to do so they must avoid even the appearance of impropriety. Like Caesar's wife, they must be above reproach.

Caesar's wife also found her way into State v. Burns, 322 S.W.2d 736, 741, 742 (Mo.1959). Here, the prosecutor, prior to taking office, had represented defendant and had acquired from the defendant full and complete knowledge of the merits of his case. The prosecutor had turned the case over to his assistant who tried the case. In reversing, the court said:

> It is impossible to tell precisely how active Mr. Colson may have been in the prosecution, or whether the information he procured from the defendant played any part therein, directly or indirectly. *But the very fact that he had acquired that information as counsel for the defendant, and that he might use it, renders his subsequent position wholly untenable.* [Emphasis added].
>
> \* \* · \* \* \* \*
>
> We do not mean to attribute intentional misconduct to Mr. Colson; but prosecuting officials, like Caesar's wife, "ought to be above suspicion." (Roman Apophthegms, Caesar.)

The State relies on Annot. 31 A.L.R.3d 953 entitled "DISQUALIFICATION OF PROSECUTING ATTORNEY ON ACCOUNT OF RELATIONSHIP WITH ACCUSED" and State v. Brazile, 231 La. 90, 90 So.2d 789 (1956), recited therein.

In State v. Brazile, supra, "Prior to the third trial of defendant for murder, his counsel filed a motion to recuse the district attorney and his assistants for the reason that the second assistant district attorney \* \* \* had served as one of defense counsel at the first trial, this occurring before [his] appointment as an assistant district attorney. In advance of the hearing, [he] filed a motion that he· be recused in view of his previous participation in the first trial. The court granted this motion. \* \* \*" The court also sustained the motion to recuse the district attorney and his assistant. The Supreme Court reversed, ·but on the basis of the Code of Criminal Procedure which provided grounds for recusation of the district attorney. The court said:

> Neither the district attorney nor his first assistant has ever been employed or consulted as attorney for defendant at any time and the fact that Mr. Ware, who has recused himself, is presently employed as the second assistant district attorney affords no ground at all for the recusation of either the district attorney or his first assistant, *as they can only be recused for one of the grounds prescribed by law.* \* \* \* [Emphasis added].
>
> Nor is there basis for recusation in the charge that there is a possibility that Mr. Ware has violated the confidential relationship existing between attorney and client. Indeed, it is to be presumed that he, as a member of the bar in good standing, has and will respect the defendant's confidence.

New Mexico has no statute on recusation of district attorneys.

*Brazile,* supra, was followed in State v. Brown, 274 So.2d 381 (La.1973), one judge dissenting. The court also held that failure to recuse the district attorney was not a violation of the Louisiana Bar Association Code of Professional Responsibility.

*Brazile,* supra, was also followed in Hannon v. State, 48 Ala.App. 613, 266 So. 2d 825 (Ct.Crim.App.1972). Here, at the first trial, defendant was represented by the public defender's office. However, he was defended only by a Mr. Harper. Mr. Butler was a member of the public defender's office. At the time of the second trial, Mr. Butler was district attorney. The actual prosecution would be conducted by a member of the district attorney's staff. Upon motion made by the defendant to dismiss the charges, "A full blown hear-

ing was had and testimony taken," of Mr. Butler, the district attorney. The Court of Criminal Appeals said:

> The record in this case clearly shows that the District Attorney did not divulge the confidential information he gained from Hannon while he was a member of the Public Defender's Office. He had not been elected District Attorney when the grand jury indicted Hannon and had no connection therewith. He inherited for prosecution all indictments returned by grand juries in Mobile County not disposed of while his predecessor was in office. The public interest demanded that the prosecution go forward. There has been no breach of the attorney-client relationship, the privilege against disclosure has been preserved, and professional ethics, painstakingly observed, and the constitutional guarantee of a fair and impartial trial was not infringed.

State v. Miner, 128 Vt. 55, 258 A.2d 815 (1969) involved the following set of facts:

Mr. Plante of the firm of Black and Plante was assigned to represent the defendant. At this time and for a brief period thereafter, Mr. Mahady was an associate in the law offices of Black and Plante and assisted in the preparation of the defense of the defendant under the supervision of Mr. Plante. Three months after Mr. Plante had been appointed defense counsel, Mr. Mahady was appointed an assistant attorney general of Vermont. Before that time, the attorney general had appeared with the State's attorney of Windsor County representing the State in the preliminary investigation and proceedings before the grand jury.

Two weeks after Mahady's appointment, defendant moved that the trial court order the disqualification of the attorney general's office from further participation in behalf of the State in the prosecution of defendant. Before the trial court ruled on the motion, the attorney general requested permission to withdraw, and permission was granted.

Shortly before trial, defendant moved to quash and dismiss the indictment because of Mr. Mahady's participation in the defense and his subsequent employment as assistant attorney general.

Following a pre-trial hearing on the motion, the trial court made findings of fact that the defendant's rights to a fair and impartial trial were protected. The Supreme Court affirmed the trial court's decision.

In State v. Orozco, supra, two prosecutors withdrew from courtroom participation and were replaced by an assistant attorney general.

Three cases have shown that a pre-trial hearing on the motion was held or it was mandatory that it be held, in which the trial court made findings of fact. State v. Miner, supra; Hannon v. State, supra; Young v. State, 177 So.2d 345 (Fla.App. 1965). See Salazar v. State, 83 N.M. 352, 491 P.2d 1163 (Ct.App.1971). Other opinions disclose that pre-trial hearings occurred.

Only two cases have been found which involve defense counsel who represented a defendant in the first trial and became an assistant district attorney in the second trial and was then recused. State v. Latigue, supra, and State v. Brazile, supra. *Latigue* recused the district attorney's office. *Brazile* did not. Which fork in the road should we take?

■ Under the Constitution of New Mexico, a district attorney is a part of the judicial system of the State and is a quasi judicial officer. State ex rel. Ward v. Romero, 17 N.M. 88, 125 P. 617 (1912). It has been held that a district attorney is a judicial officer. State v. Collins, 28 N.M. 230, 233, 210 P. 569 (1922). "While it is the duty of a prosecuting attorney to use his best endeavor to convict persons guilty of crime, his methods in procuring such conviction must accord with the fair and impartial administration of justice, and he should see that the accused receives a fair trial so far as it is in his power to afford him one. Here, if anywhere upon earth,

the benign maxim of the law, that it is better that ninety-nine guilty persons should escape than that one innocent man should be punished, prevails in all its force." 2 Thornton on Attorneys at Law, § 712 (1914); Shelton v. State, 1 Steward and Porter 208 (Ala.1831); Com. v. Nicely, 130 Pa. 261, 18 A. 737 (1889); Com. v. Bubnis, 197 Pa. 542, 47 A. 748 (1901).

People v. Gerold, 265 Ill. 448, 107 N.E. 165, Ann.Cas.1916A, 636 (1914), involved an attorney for the defendant who subsequently assisted the State's attorney in prosecuting the defendant. The Supreme Court, at great length, discussed the duties of attorneys and prosecuting attorneys in this delicate situation. Parts of this opinion disclose the following with authorities omitted:

> The rule has long been firmly established that an attorney cannot represent conflicting interests or undertake to discharge inconsistent duties. When he has once been retained and received the confidence of a client, *he cannot enter the service of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as in effect to be a part thereof.* * * * This rule is a rigid one, designed not alone to prevent the dishonest practitioner from fraudulent conduct, *but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties. He should undertake no adverse employment, no matter how honest may be his motives and intentions.* * * * If this is the rule in civil cases, the law will not be less strict in criminal proceedings, especially as to the duty in this regard resting upon counsel for the state. *Such an officer is acting in a quasi judicial capacity, and he and those associated with him should represent public justice and stand indifferent as between the accused and any private interest.* It is as much the duty of prosecuting attorneys to see that a person on trial is not deprived of any of his statu-

tory or legal rights as it is to prosecute him for the crime with which he may be charged. * * * The canons of ethics of the American Bar Association and various state associations in this country are in accord on this subject with the rule just stated. * * * The members of the profession must have the fullest confidence of their clients. If it may be abused, the profession will suffer by the loss of the confidence of the people. The good of the profession, as well as the safety of clients, demands the recognition and enforcement of these rules. * * * *It is unnecessary that the prosecuting attorney be guilty of an attempt to betray confidence; it is enough if it places him in a position which leaves him open to such charge;* * * * The administration of the law should be free from all temptation and suspicion, so far as human agencies are capable of accomplishing that object, and public policy strongly demands that one who has been employed on one side should not be permitted to appear on the other side. It is not sufficient to say that the law will not permit him to disclose any fact which may have been communicated to him.

> "If he *knows* the vulnerable points in the case, * * * there are many ways by which those points might be made available * * * besides disclosing them as a witness." * * *

> "The case might easily be put that a most honest man so changing his situation might communicate a fact appearing to him to have no connection with the case," and yet which might turn out to be the vital point therein. * * *

The authorities last cited also state that, if an attorney knows anything prejudicial to a former client, *he ought not to accept employment against him where such prejudicial information can be used against him.* * * * It is the obtaining of this knowledge from his client as his confidential adviser and attorney *that precludes him from accepting such em-*

*ployment.* [Emphasis added except for individual words.].

This language has been widely followed. Steeley v. State, 17 Okl.Cr. 252, 187 P. 821 (1920); Ward v. State, 33 Okl.Cr. 182, 242 P. 575 (1926); People v. Curry, 1 Ill.App. 3d 87, 272 N.E.2d 669 (1971); See also, State v. Detroit Motors, 62 N.J.Super. 386, 163 A.2d 227 (1960) where some cases are collected.

In State v. Detroit Motors, supra, the court said:

> The books are replete with cases indicating that *any appearance of evil* in connection with the administration of public office should and *must be avoided;* and particularly is this true of those offices involved in the enforcement of the law. [Emphasis added].

This rigid rule which applies to attorneys, also applies to the courts. In Ward v. State, supra, 242 P. at 576, the court said:

> Courts owe a duty to themselves, to the public, and to the legal profession. The due and orderly administration of justice, the honor of the legal profession, and the dignity of the court forbid such practice. * * * [T]he court must not permit it to be done. * * * It was the duty of the trial court to have forbidden the appearance.

On the issue of the ethics of the bar association, People v. Curry, supra, 272 N.E. 2d at 673, stated:

> Our examination of the Code of Professional Responsibility adopted by the organized Bar of this State, lead [sic] us to the conclusion that the philosophy expressed and quoted above is fully applicable *on an expanding rather than a contracting basis today.* [Emphasis added].

The principles set forth above, the summary in 31 A.L.R.3d 953, § 2, and the cases reviewed in §§ 4 and 5, supra, all lead us to believe that from the foundation of our government to the present day, under the facts of this case, the fair and impartial administration of justice compels us to hold that the Grant County District Attorney's Office is precluded from prosecuting the defendant. We follow the Arizona Supreme Court in State v. Latigue, supra.

The prosecution of this case can be performed by the attorney general or his legally appointed and qualified assistants and such associate counsel as may appear on order of the court with the consent of the attorney general. Section 17–1–12, N.M. S.A.1953 (Repl.Vol. 4). See also, § 4–3–5, N.M.S.A.1953 (Repl.Vol. 2, pt. 1).

Reversed.

It is so ordered.

HENDLEY and LOPEZ, JJ., concur.