704 P.2d 1109 (1985)
103 N.M. 223
STATE of New Mexico, Plaintiff-Appellee,
v.
John DOE, Defendant-Appellant.
STATE of New Mexico, Plaintiff-Appellee,
v.
John DOE, Defendant-Appellant.
STATE of New Mexico, Plaintiff-Appellee,
v.
John DOE, a Child, Defendant-Appellant.
Nos. 8019, 8211 and 8377.
Court of Appeals of New Mexico.
June 25, 1985.
Certiorari Denied August 13, 1985.
*1112 Paul G. Bardacke, Atty. Gen., William McEuen and Alicia Mason, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.
Janet E. Clow, Chief Public Defender, Lynne C. Fagan, Asst. Appellate Defender, Santa Fe, Paul J. Kennedy, Albuquerque, Lewis Fleishman, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

OPINION
HENDLEY, Judge.
These three appeals are from transfer orders pursuant to NMSA 1978, Section 32-1-30 (Repl.Pamp. 1981). References to the Children's Code are to NMSA 1978, Sections 32-1-1 to -53 (Repl.Pamp. 1981 and Cum.Supp. 1984), unless otherwise noted. For simplicity's sake the child in No. 8377 will be referred to as Abel, in No. 8211 as Baker, and in No. 8019 as Charlie. Each child raised one common issue: whether Section 32-1-30 is constitutional. We consolidate the three cases for decision.
Abel raises only the issue of the constitutionality of the statute. Other issues raised by him in his docketing statement but not briefed are abandoned. State v. Vogenthaler, 89 N.M. 150, 548 P.2d 112 (Ct.App. 1976). Baker raises the constitutional issue and the issue of whether the court abused its discretion in its consideration of Baker's amenability to treatment. Charlie raises constitutionality, abuse of discretion, and three other issues: (1) whether the court erred in refusing to close pretrial hearings to the public; (2) whether the child should have been committed under Section 32-1-35; and (3) whether a clinical law student interning for the judge, who requested and was given permission to work for the prosecutor in this case, gave rise to such an appearance of impropriety that the transfer order has to be reversed. Charlie has also abandoned some issues. Vogenthaler.
*1113 The constitutional issue will be addressed first. Next, abuse of discretion in regard to amenability will be discussed in relation first to Baker's facts, and then to Charlie's facts. Finally, Charlie's three issues will be addressed. We affirm.

I. Constitutionality of Section 32-1-30
The petition charged Abel with three counts of first degree criminal sexual penetration (CSP) of a child under thirteen years of age, and one count of contributing to the delinquency of a minor. The motion to transfer alleged that the acts occurred within forty-five days of the child's eighteenth birthday. The petition charged Baker with one count of first degree CSP (great bodily harm or mental anguish), one count of aggravated assault, one count of receiving stolen property, and one count of kidnapping. The motion to transfer alleged that the child was twelve days short of his eighteenth birthday. The petition charged Charlie with two open counts of the murder of his parents. The motion to transfer alleged that he was fifteen years old or more.
Section 32-1-30 states:
A. Notwithstanding the provisions of Section 32-1-29 NMSA 1978, after a petition has been filed alleging a delinquent act, the court may, before hearing the petition on its merits, transfer the matter for prosecution in the district court if:
(1) the child was fifteen years of age or more at the time of the conduct alleged to be a delinquent act, and the alleged delinquent act is murder under Section 30-2-1 NMSA 1978, or when the child was sixteen years of age or more and the alleged act is assault with intent to commit a violent felony under Section 30-3-3 NMSA 1978, or kidnapping under Section 30-4-1 NMSA 1978, or aggravated battery under Section 30-3-5 NMSA 1978, or dangerous use of explosives under Section 30-7-5 NMSA 1978, or a felony criminal sexual penetration under Section 30-9-11 NMSA 1978, or robbery under Section 30-16-2 NMSA 1978, or aggravated burglary under Section 30-16-4 NMSA 1978, or aggravated arson under Section 30-17-6 NMSA 1978; and
(2) a hearing on whether the transfer shall be made is held in conformity with the rules on a hearing on a petition alleging a delinquent act, except that the hearing shall be to the court without a jury; and
(3) notice in writing of the time, place and purpose of the hearing is given the child, his attorney, parents, guardian or custodian at least five days before the hearing; and
(4) the court has considered whether the child is amenable to treatment or rehabilitation as a child through available facilities; and
(5) the court makes a specific finding upon the hearing that there are reasonable grounds to believe that the child committed the alleged delinquent act.
B. The transfer terminates the jurisdiction of the court over the child with respect to delinquent acts alleged in the petition. No child shall be prosecuted in the district court for a criminal offense originally subject to the jurisdiction of the children's court unless the case has been transferred as provided in this section. In the event the child after such transfer is convicted and sentenced to confinement, he shall be remanded to the custody of the secretary of corrections for confinement at the facility or institution most appropriate with regard to the age of the child and the execution of the sentence; provided, such confinement shall be subject to any conditions the court may impose.
C. If the case is not transferred, the judge who conducted the transfer hearing shall not, over objection of a party, preside at the hearing on the petition. If the case is transferred to a district court of which the judge who conducted the transfer hearing is also a judge, that judge is disqualified upon objection of a party from presiding in the district court proceedings on the criminal matter.
The courts found reasonable grounds to believe that Baker and Charlie committed *1114 the alleged delinquent acts. Abel stipulated that there were reasonable grounds to believe that he committed the alleged delinquent acts and the court so found. No issue is raised in any case as to whether the alleged acts are crimes enumerated in Section 32-1-30(A)(1); in each case at least some acts are. No issue is raised in any case as to the children's ages. Nor is any issue raised as to the procedure at the transfer hearings or notice thereof.
On appeal, each child contends that Section 32-1-30(A)(4) is unconstitutional because it is impermissibly vague, fails to provide a discernible and constitutional standard of proof, fails to give the child adequate notice regarding the factors against which he must defend, and works to deprive the child of meaningful appellate review. In support of their arguments, the children rely on Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); and Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).
Kent held that, because a transfer decision was critically important to children, there was a need for certain essential elements of due process: a hearing with notice thereof, assistance of counsel, and a statement by the decision-maker of his reasons to facilitate meaningful review. Addington and Santosky both involved the standard of proof required for certain proceedings: civil commitment in Addington and termination of parental rights in Santosky. Because of the significant interest parents have in their children, Santosky, or citizens have in their liberty, Addington, a clear and convincing standard is required in each case. This is because such a standard insures a degree of correctness commensurate with the degree of confidence our society thinks one should have in the accuracy of a particular adjudication.
Next, the children rely on a number of cases from other states, whose holdings are that some standard of proof is required, either reasonable grounds, a preponderance of the evidence, or clear and convincing proof of the elements requisite to a transfer. The children's argument is that New Mexico's requirement that the court merely consider amenability, with the decision on the question of amenability being subject to review for abuse of discretion, is contrary to the precepts set forth in the above cases.
Our courts have already upheld the constitutionality of Section 32-1-30(A)(4), State v. Doe, 91 N.M. 506, 576 P.2d 1137 (Ct.App. 1978) (hereinafter 91 Doe); reversed one transfer for abuse of discretion in the consideration of amenability, State v. Doe, 93 N.M. 481, 601 P.2d 451 (Ct.App. 1979) (hereinafter 93 Doe); explained the difference between "considering" and "finding," State v. Doe, 97 N.M. 598, 642 P.2d 201 (Ct.App. 1982) (hereinafter 97 Doe); and reviewed prior cases, upholding a transfer over a dissent which made the same points as do the children herein, State v. Doe, 100 N.M. 649, 674 P.2d 1109 (1983) (hereinafter 100 Doe). While no one case answers the children's argument, a synthesis of these cases is dispositive of the issues raised.
The essential flaw in the children's arguments is that the children proceed on the assumption that amenability to treatment as a child is a concept that must be proved or disproved before a transfer may take place under Section 32-1-30. To the contrary, (1) proof or disproof of amenability is not requisite to a transfer under Section 32-1-30; (2) nothing in the constitution requires amenability to even be considered; and (3) the children do not challenge what is required under Section 32-1-30, or the standard of proof for it.
First, looking at the statutory scheme and the legislative history of the transfer provisions, the point that amenability need neither be proved nor disproved for transfer under Section 32-1-30 is apparent. Prior to 1975, Section 32-1-29 was the only transfer statute. 100 Doe. It allows transfer when the child is over a certain age (15), when the crime is a felony (any felony), and when there is proof of *1115 four additional elements (reasonable grounds to believe (1) the child committed the felony, (2) the child is not amenable to treatment, (3) the child is not committable, and (4) the interests of the community require that the child be legally restrained or disciplined). § 32-1-29. The addition of Section 32-1-30 transfer was intended to give more judicial latitude to allow transfer than is present under Section 32-1-29. 100 Doe. Thus, it allows transfer when the child is over a certain age (16, except for murder in which case the age is 15), when the crime is a specified felony (serious felony, 91 Doe), and when there is proof of only one additional element (reasonable grounds to believe that the child committed the felony). § 32-1-30. Of course, both statutes provide also for notice and hearing.
97 Doe summarized the foregoing paragraph in a sentence: "The amenability question does not proceed on the basis of the sufficiency of the evidence to support a `finding.'" In making their arguments which proceed on an apparently contrary assumption, the children are ignoring that the basis of Section 32-1-30 transfer is reasonable grounds to believe that a child over a certain age committed a serious felony. Amenability enters the analysis only to let the children's court know that it is not required to transfer all children believed to have committed serious felonies. See 93 Doe.
Second, there is nothing in the constitution that would require amenability to be something that is the subject of a finding. That amenability be something which is the subject of a finding is essential to the children's argument. As stated in Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), "the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court." There simply must be due process in whatever context the state decides to use. Kent. Thus, if a state uses a court hearing, leaving discretion to the judge under nebulous standards, there must be notice, a hearing, counsel, and a statement of reasons. Kent. However, if for example, a state chooses to transfer all murder cases, all the Kent safeguards are not necessary. Stokes v. Fair, 581 F.2d 287 (1st Cir.1978). Similarly, when the decision to transfer is not made by the court, but rather is one of prosecutorial discretion, the Kent standards do not apply. United States v. Quinones, 516 F.2d 1309 (1st Cir.1975) (relying on 18 U.S.C. § 5032 (1970) which vests in attorney general discretion to proceed against juvenile as an adult).
Thus, in the context of our statute, the Kent standards are met. The criteria for transfer are that a child of a certain age committed a certain felony. There is provision for notice, a hearing, and findings. The quantum of evidence is reasonable grounds to believe. Had the Legislature entirely omitted Section 32-1-30(A)(4), the statute would pass constitutional muster under Kent. The facts that the court has discretion not to transfer certain children and that the discretion is guided by a consideration of amenability to treatment as a child do not make a provision intended to benefit children unconstitutional.
When states go through the process of deciding what criteria will be used to govern transfers, the only substantive constitutional restrictions under which they operate are that the criteria not be arbitrary or discriminatory. Woodard v. Wainwright, 556 F.2d 781 (5th Cir.1977); State v. Wilson, 409 A.2d 226 (Me. 1979); State v. Sharon, 33 Wash. App. 491, 655 P.2d 1193 (1982). Allowing the children's court to deny transfers after considering the amenability question is not arbitrary or discriminatory. See 91 Doe. This Court further insures that there will be no unlawful arbitrariness in the transfer decision. See 93 Doe.
Third, the children do not specifically challenge the "reasonable grounds to believe" standard insofar as Section 32-1-30(A)(5) is concerned. Indeed, a case relied on by all children expressly approves of the reasonable grounds standard. In re Appeal *1116 in Maricopa County Juvenile Action No. J-84984, 138 Ariz. 282, 674 P.2d 836 (1983). The court in Maricopa approved of such a low standard because the consequences of a transfer, although important to the child, were simply not as important as the stigma, loss of liberty, or loss of parental rights at issue in Addington or Santosky. After all, the child still has to be tried on and found guilty of the charges before such serious consequences attach. The transfer process only decides where he will be tried. See In re Bobby C., 48 Md. App. 249, 426 A.2d 435 (1981).
Thus, because amenability is not constitutionally required to be considered, because our statute does set forth other factors upon which there must be evidence satisfying a certain standard of proof, and because our courts will review the "consideration" of amenability to insure that there is no arbitrariness or discrimination, Section 32-1-30(A)(4) is not unconstitutional.

II. Abuse of Discretion
Our cases review the trial court's consideration of the child's amenability to treatment under an abuse of discretion standard. 100 Doe; 97 Doe; 93 Doe. It is not the function of an appellate court to retry the case for a different or better result. 100 Doe.
93 Doe has been the only case to reverse the trial court's exercise of discretion in this regard. In 93 Doe, the evidence was uncontradicted that the child was amenable to treatment through available facilities. Additionally, the facts in 93 Doe indicated that the alleged murder may have been a hunting accident. Finally, although 93 Doe was expressly not decided on this ground, the prosecutor's reasons for seeking the transfer were the exact opposite of the policies underlying the Children's Code.
In contrast, in 100 Doe, the evidence, although uncontradicted that the child was amenable to treatment, revealed some problems regarding the length of treatment necessary and whether the treatment was feasible under the time constraints of the Children's Code. The apparent existence of these problems created a conflict in the evidence such that the "uncontradicted evidence" rule of 93 Doe did not apply. There was no abuse of discretion in ordering the transfer. See 100 Doe.

A. Baker
Baker claims that the evidence was essentially uncontradicted that he was amenable to treatment in available facilities. A juvenile probation officer so testified. A psychologist also testified.
The only parts of the psychologist's testimony transmitted to this Court as the record on appeal covered the redirect examination and the court's questions to the witness. Berlint v. Bonn, 102 N.M. 394, 696 P.2d 482 (Ct.App. 1985), noted that, even though it is the court clerk's obligation to transmit the tapes, this does not alter the general rule that the burden is on appellant to insure that this Court has a record adequate to review the issues. When the record is incomplete, this Court assumes that the missing portions would support the trial court's determination. State v. Padilla, 95 N.M. 86, 619 P.2d 190 (Ct.App. 1980). Thus, in this case, we assume that the direct and cross-examination of the psychologist showed enough conflict or problems on the question of amenability that the trial court did not abuse its discretion in ordering a transfer. Compare 100 Doe with 93 Doe.

B. Charlie
Charlie also contends that the trial court abused its discretion in ordering the transfer. His contentions are limited to the somewhat unique circumstances of his case.
The amenability part of the hearing consisted of the testimony of four mental health professionals, two for the state and two for the child. All the experts agreed that the child has a personality disorder, characterized by magical thinking, illusions, grandiosity, obsessiveness, and rage. While the child is not presently psychotic, some experts thought that he could easily *1117 degenerate to the point of psychosis. All the experts agreed that the child needs both psychotherapy and behavior modification, and that he should not go to the penitentiary. The experts differed markedly, however, on the potential success of treatment, and the appropriate facility for treatment.
Before discussing the experts' differences, we make some preliminary comments on the facts and law. First, the child was born on December 19, 1967, thus making him sixteen and one-half years old at the time of the hearing. In 100 Doe, the only factor that made the evidence conflicting, contrary to 93 Doe, on the question of the child's amenability to treatment, was the time limitation on children's court dispositional judgments. This is a factor that creates an evidence conflict here. Second, 100 Doe, State v. Doe, 99 N.M. 456, 659 P.2d 908 (Ct.App. 1983), and 97 Doe make it clear that all the trial court need do is "consider" the amenability question. Third, evidence of amenability is different than evidence of a need for treatment. 91 Doe. To raise an amenability question, there must be some evidence of the child's potential response to treatment. Fourth, amenability is an evidentiary question and necessarily involves a prediction as to the child's future conduct. 93 Doe. Finally, while this Court has yet to define "available," there must be evidence, beyond the mere existence of facilities, that facilities are available. 91 Doe.
In this case, four types of facilities were discussed. At least one expert found inadequacies at each available facility. None of the other facilities discussed were shown to be ready, willing, or able to accept the child. Therefore, the evidence was not uncontradicted on the amenability question. Compare 93 Doe. Additionally, the experts varied on the length of necessary treatment as follows: Winslow  3-8 years; Franklin  3-4 years, and possibly as long as 10; Reed  2 years minimum, possibly 3-5 or longer; Fredman  1 1/2-2 years is the lower limit. As time constraint is a legitimate factor, see 100 Doe, this evidence supported a transfer.
More fundamentally, however, this child has had no previous contact with the juvenile justice system or treatment. The child cites this as a reason why he should not be transferred. The state cites this as a reason why the experts do not even know if treatment will succeed at all. See 91 Doe. Under these circumstances, the trial court could have determined to put little faith in the experts' predictions and could have found (although a finding is not necessary) that there was no evidence of the child's amenability to treatment at all.
Finally, the trial court did carefully consider the question of amenability and entered a detailed order showing how it was considered. Although the court was careful not to elevate its considerations to findings, the evidence supports each of the court's considerations. For these reasons, and because the evidence was not uncontradicted as in 93 Doe, there was no abuse of discretion. 100 Doe; 97 Doe; 91 Doe.

III. Charlie's Other Issues

A. Closure of Pretrial Hearings
Charlie claims that the children's court erred in not closing some of the pretrial hearings (the release hearing and the probable cause portion of the transfer hearing) because the publicity surrounding this case would make it impossible for him to later get a fair trial. He, therefore, asks for a reversal of the transfer. This remedy is completely inappropriate. Cf. State v. Pedroncelli, 97 N.M. 190, 637 P.2d 1245 (Ct.App. 1981). The child does not even suggest that any prejudice to his rights to a fair transfer hearing occurred because of the refusal to close some earlier hearings. In children's court cases, no less than in adult cases, State v. Wright, 84 N.M. 3, 498 P.2d 695 (Ct.App. 1972), error must be prejudicial to be reversible. NMSA 1978, Child.Ct.R. 17 (Repl. Pamp. 1982). See In re Doe, 89 N.M. 700, 556 P.2d 1176 (Ct.App. 1976).

*1118 B. Commitment Under Section 32-1-35
The child recognizes, and we agree, that 91 Doe controls this issue adversely to him. Whether a child is committable is a factor under Section 32-1-29 transfers but not under Section 32-1-30 transfers. Accordingly, no abuse of discretion occurs when a trial court does not institute commitment proceedings in transfers under Section 32-1-30. 91 Doe.

C. Appearance of Impropriety
The factual basis for this issue is that a University of New Mexico law student, Rita Sturm, was a clinical intern for the children's court judge. She did some work for the judge on other matters, she observed this case, she sought and received the permission of the judge to work with the prosecutor on this case, but she did no work for the judge on this case.
Both the state and the child cite federal cases that are somewhat similar to this issue. In two of the child's cases, Kennedy v. Great Atlantic & Pacific Tea Co., Inc., 551 F.2d 593 (5th Cir.1977), and Price Brothers Co. v. Philadelphia Gear Corp., 629 F.2d 444 (6th Cir.1980), the facts were different and more egregious. In those cases, the judge's law clerk went to visit the scene and then reported back to the judge the information. This was manifestly improper. It is clear that a judge, himself, could not go to visit the scene and thereby obtain extrajudicial information. In Hall v. Small Business Administration, 695 F.2d 175 (5th Cir.1983), the facts were perhaps more egregious, but what made the case less egregious was that the judge stated for the record that he was totally uninfluenced by the facts. Despite this, the case was reversed because of the appearance of impropriety.
In the two cases cited by the state, Reddy v. Jones, 419 F. Supp. 1391 (W.D.N.C. 1976); and Simonson v. General Motors Corp., 425 F. Supp. 574 (E.D.Pa. 1976), the facts were different than the facts in this case. In both of those cases, the law clerk had some contact with a party. However, in each of those cases, the law clerk was not only taken off the judge's work but he was also taken off the parties' work. In this case, while the law clerk may have been taken off the judge's work, she appeared to be actively involved in the parties' work.
In deciding this case, we consider the comparison between State v. Mata, 88 N.M. 560, 543 P.2d 1188 (Ct.App. 1975), and State v. Chambers, 86 N.M. 383, 524 P.2d 999 (Ct.App. 1974), important. In Chambers, a defense attorney went to work for the prosecutor. Even though he did no work on defendant's case and did not divulge privileged information, this Court held that the appearance of impropriety required a reversal. Mata involved similar facts, but the issue was not raised until after appeal. This Court held that the evidence presented at the post conviction hearing dissipated the appearance of impropriety and that the claim was stale.
The trial court's findings of fact in this case, which are supported by the evidence, show (1) that this case is like Mata in that the appearance of impropriety was dissipated and the claim was not raised in a timely fashion, and (2) that the federal cases are distinguishable because Ms. Sturm did not really act as a judge's law clerk. Thus, a reversal in this case is not warranted.
The facts show that Ms. Sturm was in no way a law clerk as is described in the federal cases. Her relationship with the judge was much less close. The judge basically allowed her access to hearings and files, introduced her around the building, and had her do three small research projects which were then not discussed. The facts also show complete isolation between Ms. Sturm and the judge insofar as this case is concerned. The facts finally show that, although the defense knew of Ms. Sturm's various roles prior to the transfer hearing, it did not seek any relief based on them until after the judge had ruled adversely on the merits. Under Mata, the child's claim is rejected.
*1119 Affirmed.
IT IS SO ORDERED.
BIVINS and ALARID, JJ., concur.